# MONTANA COMPANY *v.* ST. LOUIS MINING AND MILLING COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF MONTANA.

No. 167.   Submitted December 13, 1893. — Decided March 5, 1894.

The provision in section 376 of the Code of Civil Procedure of Montana, which authorizes a court on the petition of a person interested in a lead, lode, or mining claim which is in the possession of another person, after notice to the adverse party, to order an inspection, examination, or survey of the lode or mining claim in question, and that the petitioner shall have free access thereto for the purpose of making such inspection,

examination, and survey, and that any interference with him while acting under such order, shall be contempt of court, is not in conflict with the Constitution of the United States.

THE facts in this case are as follows: On November 6, 1889, the defendant in error filed in the District Court of the county of Lewis and Clarke, in the then Territory of Montana, its petition praying an order for the inspection of certain mines alleged to be the property and in possession of the Montana Company (Limited). Notice was given, the defendant appeared and answered, a· hearing was had, and on the 7th of December, 1889, an order for an inspection was made by the judge of said court. This order. recited the giving of the notice, the hearing of the application, the production of evidence, and the arguments of counsel; finds that an inspection is necessary for the ascertainment, enforcement, and protection of the rights and interests of the petitioner in the mining claim owned by it; appoints the inspectors, and directs that they make an inspection, examination, and survey. It limits the survey to ·the vertical planes of the end lines of the petitioners' claim, forbids the removal of any ore or minerals, or entrance to the mine unless accompanied by three representatives of the defendant, and in general makes suitable provisions to prevent any unnecessary interference with the defendant's working of the·mine. By subsequent proceedings in the way of contempt, Rawlinson T. Bayliss, the general manager of the Montana Company (Limited), became a party to this litigation, and upon an adverse termination thereof in the District Court a review was sought in the Supreme Court of the State, the Territory having been admitted into the Union intermediate the filing of the application and the final disposition of the case in the District Court. By that court the proceedings were sustained, and on February 4, 1890, it entered a judgment of affirmance. To review this judgment the defendants sued out a writ of error from this court. The statute under which the proceedings were had is section 376 of the Code of Civil Procedure, (Compiled Statutes, p. 162,) and is in these words:

" Whenever any person shall have any right to or interest in any lead, lode, or mining claim which is in the possession of another person, and it shall be necessary for the ascertainment, enforcement, or protection of such right or interest that an inspection, examination, or survey of such mine, lode, or mining claim should be had or made; or whenever any inspection, examination, or survey of any such lode or mining claim shall be necessary to protect, ascertain, or enforce the right or interest of any person in another mine, lead, lode, or mining claim and the person in possession of the same shall refuse for a period of three days after demand therefor in writing, to allow such inspection, examination, or survey to be had or made, the party so desiring the same may present to the district court or a judge thereof of the county wherein the mine, lead, lode, or mining claim is situated a petition under oath setting out his interest in the premises, describing the same, that the premises are in the possession of a party, naming him, the reason why such examination, inspection, or survey is necessary, the demand made on the person in possession so to permit such examination, inspection, or survey, and his refusal so to do. The court or judge shall thereupon appoint a time and place for hearing such petition and shall order notice thereof to be served upon the adverse party, which notice shall be served at least one day before the day of hearing. On the hearing either party may read affidavits, and if the court or judge is satisfied that the facts stated in the petition are true, he shall make an order for an inspection, examination, or survey of the lode or mining claim in question in such manner, at such time, and by such persons as are mentioned in the order. Such persons shall thereupon have free access to such mine, lead, lode, or mining claim for the purpose of making such inspection, examination, or survey, and any interference with such persons while acting under such order shall be contempt of court. If the order of the court is made while an action is pending between the parties to the order, the costs of obtaining the order shall abide the result of the action, but all costs of making such examination or survey shall be paid by the petitioner."

*Mr. W. E. Cullen, Mr. A. H. Garland,* and *Mr. H. J. May* for plaintiffs in error.

The statute under which this proceeding is brought, while not entirely without precedent, seems to be one of unusual hardship, and one which might be made the instrument of much oppression and injustice. Its operation, it is true, is confined to mining claims, but if the principle is a good one, no reason is perceived why it might not be extended to any other species of property. The title which a miner obtains to his mining claim differs in no essential respect from that by which any other property is held, so far as the right to equal protection of law is concerned. If, as in the case at bar, a person, who is about to bring an action of some sort against a mine owner, is to be entitled to go into the premises to make a survey of them to ascertain what development work has been done on them, and what ore has been extracted, then it would seem that it would be only even-handed justice to allow one about to commence an action of ejectment against another for a farm, to go upon the demanded premises for the purpose of surveying them that he may get an accurate description for insertion in his complaint, or for the purpose of enabling him to determine what have been the mesne profits, to allow him to go into the bins and granaries of the defendant and measure their contents. No right of this kind existed at common law, nor is such procedure authorized by statute in any State in the Union with reference to any other species of property than mining claims.

To justify the making of an order for an inspection, examination, or survey, the petitioner must establish the fact that he has "a right to or interest in" the lead, lode, or mining claim so to be examined or surveyed, or that he is the owner of another mining claim, and that it is necessary for the purpose of protecting, ascertaining, and enforcing his rights in such claim that he should be permitted to inspect, examine, or survey another mining claim belonging to his neighbor. In either case there is a question of ownership — of right or title to real estate to be found by the court. The issue is as

material and substantial in all respects as if it were presented in an action of ejectment or trespass. No reason is perceived why the final order made should not have the binding force, as to this issue, of a judgment or decree, and be conclusive between the parties. To say the least of it, this is a very considerable encroachment on the right of trial by jury secured by the Constitution.

It is safe to say that section 376 of the Montana Code of Civil Procedure is a very pernicious and dangerous piece of legislation, and one liable to great abuse. It engrafts upon the judicial system a principle not known to the common law, and one not found in the laws of any State or Territory in the Union, with two exceptions. Nowhere is it made applicable to any other species of real estate except mining claims, and under its terms the tenure of this class of property is rendered most precarious. A mine-owner on an *ex parte* hearing, or at best on barely one day's notice, may have possession of his property taken from him, and be kept out of possession of it indefinitely. And this can be done without any security being given for the payment of his inevitable damages, perhaps without even a cause of action against the petitioner for damages, and without that orderly ascertainment of his rights in a court of justice which is the birthright of every freeman. We do not believe that a miner thus holds his property under the ban of the law, and we do believe that the constitution of Montana extends to it a just and equal protection; and if it does not, surely the Constitution of the United States does. And we submit there was no mistake in our designating, in the first part of this brief, this statute as special, harsh, innovating and summary, as well as unconstitutional.

It is useless to consume time in examining and analyzing the decisions in the English courts of equity, as these courts, with their great powers, make and mould their process, and deal with these questions as equity requires. But here is a statute giving a certain power, which, construed, we say is cruel, and violates the organic law of the nation, and these English cases do not and cannot enlighten us on this point.

*Mr. E. W. Toole* and *Mr. John B. Clayberg* for defendant in error.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

The decision of the Supreme Court of the State ends all inquiry as to a conflict between the statute or the proceedings had thereunder and the state constitution.  The only question we may consider is whether there is any violation of the provisions of the Federal Constitution.

In the petition filed for the writ of error the plaintiffs in error alleged as the basis thereof that " the validity of said statute is drawn in question on the ground of its being repugnant to that provision of the Fourteenth Amendment to the Constitution of the United States, which prohibits any State from depriving any person of life, liberty, or property, without due process of law."

In the brief it is said that the Chief Justice of the Supreme Court of the State, in his opinion, summarized exactly what they insist upon, as follows:

" It is contended that this statute is unconstitutional, and authorizes the inspection, examination, and survey of the mining property of the Montana Company (Limited) upon the petition of the St. Louis Mining and Milling Company of Montana, and before the commencement of any action by the parties.  The obnoxious features are pointed out in the brief, and may be summarized under the following heads : This law may be made an instrument of oppression and injustice ; the quality of the interest of the petitioner is not defined ; no bond is required to be given to secure the payment of the damages which may result to the owner of the property which is invaded ; no appeal is allowed from the order of the court or judge in granting the prayer of the petitioner; the power of the court or judge is vast, and can practically confiscate any mine in the State ; the innocent owners of mining property are injured without ' due process of law.' "

Inspection orders like this have been frequently made, some-

times under the authority of special statutes and sometimes by virtue only of the general powers of a court of equity. See the following cases, most of which are collected in the opinion. of the Supreme Court of the State: *Earl of Lonsdale* v. *Curwen*, 3 Bligh, 168; *Walker* v. *Fletcher*, 3 Bligh, 172; *Blakesley* v. *Whieldon*, 1 Hare, 176; *Lewis* v. *Marsh*, 8 Hare, 97; *Bennitt* v. *Whitehouse*, 28 Beav. 119; *Bennett* v. *Griffiths*, 30 L. J. N. S. Part 2, Q. B. 98; *Whaley* v. *Brancker*, 10 Law Times N. S. 155; *Thornburgh* v. *Savage Mining Co.*, 1 Pac. Law Mag. 267; *S. C.* 7 Morrison Min. Rep. 667; *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 80; *Thomas Iron Co.* v. *Allentown Mining Co.*, 1 Stewart, (28 N. J. Eq.) 77.

It was said in *Lewis* v. *Marsh*, *supra*, by the Vice-Chancellor: "I think the case is one in which there is a necessity that the party should be allowed what he asks, in order to prove his case. That is the meaning of necessity. A party cannot get his rights without proving what his rights are; and it is inherent in the case that the plaintiffs should have an opportunity of ascertaining that the defendants do not work more coal than they are entitled to do."

And in *Bennett* v. *Griffiths*, where leave was asked not merely for an inspection, but for making a driftway through a wall for the purpose of determining what workings had been done behind it, the court, by Cockburn, C. J., said: "We are of opinion that the judge had jurisdiction to make the order in question. The power to order an inspection of real or personal property has long existed in the courts of equity, and we find that as ancillary to that power the courts of equity have ordered the removal, where necessary, of obstructions to the inspection."

In *Thornburgh* v. *Savage Mining Co.*, 7 Morrison's Min. Rep., a case heard and determined in the Circuit Court of the United States for the District of Nevada by the District Judge, Alexander W. Baldwin, we find the matter thus discussed:

"Ought a court of equity, in a mining case, when it has been convinced of the importance thereof for the purposes of the trial, to compel an inspection and survey of the works of

the parties, and admittance thereto by means of the appliances in use at the mine? All the analogies of equity jurisprudence favor the affirmative of this proposition. The very great powers with which a court of chancery is clothed were given it to enable it to carry out the administration of nicer and more perfect justice than is attainable in a court of law.

. "That a court of equity, having jurisdiction of the subject-matter of the action, has the power to enforce an order of this kind will not be denied. And the propriety of exercising that power would seem to be clear, indeed, in a case where, without it, the trial would be a silly farce. Take, as an illustration, the case at bar. It is notorious that the facts by which this controversy must be determined cannot be discovered except by an inspection of works in the possession of the defendant, accessible only by means of a deep shaft and machinery operated by it. It would be a denial of justice, and utterly subversive of the objects for which courts were created, for them to refuse to exert their power for the elucidation of the very truth — the issue between the parties. Can a court justly decide a cause without knowing the facts? And can it refuse to learn the facts?"

See also *Kynaston* v. *East India Co.*, 3 Swanst. 249, in which an inspection of buildings was ordered to enable the inspectors to testify as to the value; *State* v. *Seymour*, 6 Vroom, (35 N. J. L.) 47, 53; and *Winslow* v. *Gifford*, 6 Cush. 327.

In the latter case it appeared that certain commissioners, under authority of a statute, entered upon the lands of the plaintiff and made certain surveys, with a view of ascertaining the boundaries of a tract of land devoted to public purposes, no compensation being provided for such apparent trespass. Plaintiff brought suit to recover damages therefor. It was held that the act authorizing such entry without compensation was not unconstitutional. Other instances of like temporary occupancy were referred to by the court in its opinion, such as the act of the sheriff, with criminal process against an individual, going to arrest him on the land of a third party; entering upon the lands of an individual for the purpose of surveying

for a highway, when, as a result of such survey, the purpose of establishing the highway is abandoned. It was conceded that such entry and occupancy created a slight trespass upon the absolute right of the owner to an undisturbed and exclusive use of his real estate, but it was held that if the occupancy was reasonably necessary for some public purpose, was temporary, and with no unnecessary damage, it carried no right to compensation. Other instances will readily suggest themselves in which there is some temporary interference with a man's absolute control of his own property, as when a party is compelled to produce his books and papers for examination by the adverse party, or when, through a receiver, possession of property is taken pending a dispute as to the title or liens upon it. All these cases involve some invasion of the rights of the owner to the possession and use of his property, yet the necessities of justice seem to compel it.

It is true that most of the reported cases of order for inspection are of recent date, but the question whether a certain proceeding is due process of law is not determined by the matter of age. In *Hurtado* v. *California*, 110 U. S. 516, 537, the question was presented whether the prosecution of criminal offences by information rather than by indictment, if authorized by the constitution and laws of a state, was in conflict with the clause of the Fourteenth Amendment to the Constitution of the United States requiring due process of law, and it was held that it was not, and that such mode of proceeding, though of recent origin, was nevertheless due process of law. The court, by Mr. Justice Matthews, after referring to the fact that there are certain fundamental rights which cannot be disregarded, said: " It follows that any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law."

On the other hand, while not decisive of the question, the frequency with which these orders of inspection have of late years been made, and the fact that the right to make them has

never been denied by the courts, is suggestive that there is no inherent vice in them.   And if the courts of equity, by virtue of their general powers, may rightfully order such an inspection in a case pending before them, surely it is within the power of a State by statute to provide the manner and conditions of such an inspection in advance of the suit.   To " establish justice " is one of the objects of all social organizations, as well as one of the declared purposes of the Federal Constitution, and if, to determine the exact measure of the rights of parties it is necessary that a temporary invasion of the possession of either for purposes of inspection be had, surely the lesser evil of a temporary invasion of one's possession should yield to the higher good of establishing justice; and any measures or proceedings which, having the sanction of law, provide for such temporary invasion with the least injury and inconvenience, should not be obnoxious to the charge of not being due process of law.

Passing from these general suggestions to some of a more special character, it must be remembered that inspection does not deprive the owner of the title to any portion of his property, nor does it deprive him permanently of the use.   The property, therefore, is not taken in the sense that he no longer remains the owner, nor in the sense that the permanent use of the property has been appropriated.   In *Pumpelly* v. *Green Bay Company*, 13 Wall. 166, it was held that if a party is deprived of the entire use of his property it is a taking within the scope of the Fifth Amendment, although the mere title is not disturbed.   But by an inspection neither the title nor the general use is taken, and all that can be said is that there is a temporary and limited interruption of the exclusive use.   And it is in that light that the question of the validity of this statute is to be determined.

Counsel for plaintiffs in error contend that there is possibility of grievous wrong being done in carrying into effect the provisions of this statute, and say that the question of validity is to be determined not by the amount of wrong done in the present case, but by what may be done in other cases, quoting the language of Earl, J., in *Stuart* v. *Palmer*, 74 N. Y. 183,

188: "The constitutional validity of law is to be tested not by what has been done under it, but by what may, by its authority, be done." This test is accurate, provided, of course, it is limited to what may rightfully be done, and does not extend to that which is wrongfully, though under pretence of the statute, done. Thus, that the power of a court of equity to grant injunctions is not inhibited by the constitutional provision requiring due process of law is clear, although in a particular case a court may disregard the rules of equity and justice in granting the injunction.

It is objected that the statute does not define the quality of "right to or interest in" the mining claim which entitles to an inspection. But does the amount of a party's interest determine the question of the constitutionality of a statute passed to enable an accurate determination thereof? Suppose it be true that a petitioner has but a limited interest in a mine, has not that petitioner a legal right to the protection of that interest equal to that of the other owners? Has he not the same constitutional right to any means of ascertaining and enforcing that interest that belongs to any other party interested in the mine? Indeed, it may be said to be generally true that the weaker a party and the smaller his interest, the greater the need of the strong hand of the court to ascertain and protect his rights. It is true, the quality of the right or interest is not defined, but it must, in order to come within the statute, be a "right to or interest in" the mining claim. The language is general and comprehensive, because the intent is to include within its purview every actual right, every real interest. While it is possible that in any particular case a court may err in determining the existence of a right or interest, the same possibility attaches to all litigation. If it be the duty of the State to protect the rights of its citizens, it certainly cannot be a violation of that duty to provide a uniform rule for the admeasurement of all rights of a similar character, large or small.

The failure to require a bond, or in terms to allow an appeal, is not fatal to the constitutionality of the act. It is familiar knowledge that the Circuit Courts of the United

States are not compelled in granting preliminary injunctions to take from the plaintiff a bond of indemnity to the defendant, and, frequently, they do not take any.  As in such cases the matter of a bond is within the discretion of the judge, so, whether a bond shall be required as preliminary to an inspection, is a matter within the discretion of the State.  The right to an inspection does not depend upon a bond, and the order for an inspection does not cease to be due process of law because a bond is not required.  No inspection is ordered by the court or judge until there has been a hearing and an adjudication of the petitioner's right; and while further testimony in the future litigation between the parties may show that such adjudication was erroneous, and that there is, in fact, no right on the part of the petitioner, yet that is a result common to all litigation, and does not gainsay the statement that the inspection is based upon a right established by judicial determination.  Nor can the withholding, if it be withheld, of an appeal affect the question of due process.  An appeal simply means a second hearing; and if one hearing is not due process of law, doubling it cannot make it so.

No more significant is the want of a trial by jury upon the existence of the right or interest prior to the order for the inspection.  A jury trial is not in all cases essential to due process of law. *Murray's Lessee* v. *Hoboken Land Co.*, 18 How. 272; *Palmer* v. *McMahon*, 133 U. S. 660.  Equity proceeds to final determination of the most important rights without a jury, and nothing is more common than a new proceeding established by statute to be carried on without the aid of a jury, as, for instance, proceedings by the State under its right of eminent domain: *Livingston* v. *New York City*, 8 Wend. 85.  To determine the right to office under an election: *Whallon* v. *Bancroft*, 4 Minnesota, 109.  To compel delivery of the possession of the seal, records, and papers of an office: *Atherton* v. *Sherwood*, 15 Minnesota, 221.  To appoint guardians of insane persons: *Gaston* v. *Babcock*, 6 Wisconsin, 503.  To assess the value of improvements under the occupying claimants' law: *Ross* v. *Irving*, 14 Illinois, 171.  To enforce statutory liens upon vessels for labor and material:

*Sheppard* v. *Steele*, 43 N. Y. 52. To determine the settlement of paupers: *Shirley* v. *Lunenburg*, 11 Mass. 379. For the assessment and collection of taxes: *Crandall* v. *James*, 6 R. I. 144. But it is needless to multiply instances.

In conclusion, it may be observed that courts of equity have, in the exercise of their inherent powers, been in the habit of ordering inspections of property, as of requiring the production of books and papers; that this power on the part of such courts has never been denied, and if it exists, *a fortiori*, the State has power to provide a statutory proceeding to accomplish the same result; that the proceeding provided by this statute requires notice to the defendant, a hearing and an adjudication before the court or judge; that it permits no removal or appropriation of any property, nor any permanent dispossession of its use, but is limited to such temporary and partial occupation as is necessary for a mere inspection; that there is a necessity for such proceeding in order that justice may be exactly administered; that this statute provides all reasonable protection to the party against whom the inspection is ordered; that the failure to require a bond, or to provide an appeal, or to have the question of title settled before a jury, is not the omission of matters essential to due process of law. It follows, therefore, that there is no conflict between this statute and the Fourteenth Amendment of the Constitution of the United States, and the judgment of the Supreme Court of Montana is

*Affirmed.*