(December 31, 1910.)

## M. W. BACON, Appellant, v. FEDERAL MINING AND SMELTING COMPANY, a Corporation, Respondent.

[112 Pac. 1055.]

INSPECTION OF MINES—POWER OF COURTS OF EQUITY—SUFFICIENCY OF COMPLAINT.

(Syllabus by the court.)

1. Rev. Codes, sec. 4542, is merely a legislative declaration of what has been recognized as the general equity powers of the court, and is intended to enable any person who claims possession, title to, or interest in, any real property or mining claim, to make examination and inspection of the property, for the purpose of protecting and preserving such possession, title, or interest in, such property.

2. Under the provision of this section of the statute, it is necessary for the plaintiff to allege and show a *bona fide* claim to possession, title to, or interest in, the property sought to be examined and inspected, in order to give the court jurisdiction and power to make the order.

3. A complaint alleging that the plaintiff is a judgment creditor of the defendant, and has caused an execution to issue upon such judgment, and to be levied upon an interest of the defendant in a mining claim, does not show a state of facts sufficient to entitle the plaintiff to an order permitting plaintiff to examine and inspect such property, prior to the execution sale.

4. A complaint alleging that the plaintiff is a judgment creditor, and has caused an execution to issue against the judgment debtor, and to be levied upon property of the judgment debtor, does not allege facts showing any necessity for the granting of an order permitting the plaintiff to examine and inspect the property levied upon, prior to the execution sale.

APPEAL from the District Court of the First Judicial District, in and for Shoshone County. Hon. W. W. Woods, Judge.

Application for an order permitting the plaintiff to examine and inspect a mining claim, levied upon and advertised for sale under an execution sale. Demurrer to the complaint sustained. Plaintiff appeals. *Affirmed.*

Featherstone & Fox and Cullen & Dudley, for Appellant.

The entire property was *in custodia legis.* (17 Cyc. 954, 1121.)

The court certainly had the power to make such an order. The request for an inspection was an entirely reasonable one. It was to the interest of plaintiff, to the interest of the judgment debtor, and could in no wise injure the defendant herein.

"Independent of any state legislation, as an aid to discovery in pending actions, the power to order an inspection of real property has long existed in the courts of equity." (2 Lindley on Mines, 2d ed., sec. 873, and cases cited.)

A liberal construction of this statute gives the court ample authority to make such an order as prayed for by the plaintiff.

"But the power . . . . is not derived from the statute alone. It arises independently of it, from the necessities of the administration of justice and is inherent in this court." (*Platt v. Bright,* 31 N. J. Eq. 82.)

Gray & Knight, for Respondent.

Until the sale of the property and purchase thereof, and issuance and delivery of the certificate of sale, no one other than the owner or owners has any right or title to any portion of the property, or interest therein, and until the issuance and delivery of the sheriff's deed, after the time allowed for redemption has expired, the purchaser at the sale would have no right to the possession of the property, or any part thereof. (*Cantwell v. McPherson,* 3 Ida. 721, 34 Pac. 1095.)

Under the statute until a person has a *bona fide* claim to the possession, or a *bona fide* claim to the title of, or a proprietary interest in, real property or mining claim, he has no right to inspect the same, nor is he entitled to an order for inspection.

An "interest" means share, portion, part, participation or right in the estate, less than title. (*Hurst v. Hurst,* 7 W.

Va. 297; *Young v. Young*, 89 Va. 675, 17 S. E. 470, 23 L. R. A. 642; *Sanford v. Johnson*, 24 Minn. 173.)

"The inspection must be limited to premises in which the petitioner has some sort of proprietary interest." (*State v. District Court*, 26 Mont. 396, 68 Pac. 573, 69 Pac. 103.)

It has been said that a mortgage or judgment lien is no interest, estate or title in the property itself. (*Ind. School District v. Werner*, 43 Iowa, 643; *Daniels v. Densmore*, 32 Neb. 40, 48 N. W. 906; *Rodgers v. Bonner*, 45 N. Y. 379.)

Montana has a statutory provision similar in many respects to our sec. 4542, but which is much broader in its terms than our own, which has been construed by the supreme court of that state in *State ex rel. v. District Court*, 26 Mont. 396, 69 Pac. 570; *State ex rel. Geyman v. District Court*, 26 Mont. 433, 68 Pac. 797; *State ex rel. Anaconda Copper M. Co. v. District Court*, 26 Mont. 412, 68 Pac. 1134.

Courts have no power to compel an owner to submit to an invasion of his property, or to compel an owner to permit one to enter on his premises for the purpose of making an examination of property situated thereon, when the owner objects thereto. (*Martin v. Elliott*, 106 Mich. 130, 63 N. W. 998, 31 L. R. A. 169; *State v. District Court*, 26 Mont. 396, 68 Pac. 574, 69 Pac. 103.)

The purchaser at execution sale takes his chance upon there being any value in such interest. (22 A. & E. Enc. Law, 103, 104.)

STEWART, J.—This action is brought for the purpose of securing an order of the district court of Shoshone county permitting the plaintiff, appellant here, to inspect, examine, and survey the Skookum Lode Mining Claim.

A general demurrer was filed to the complaint, and sustained by the trial court, and the plaintiff declining to amend, judgment was rendered in favor of the defendant. From this judgment this appeal is taken.

It is alleged in the complaint that Kennedy J. Hanley is the owner of a one-eighth interest in the Skookum Lode Mining Claim, and that the Federal Mining and Smelting Com-

pany is the owner of the remaining seven-eighths interest; that on the 8th day of June, 1909, the plaintiff obtained a judgment against the said Hanley for the sum of $51,856.51. and thereafter caused execution to issue upon said judgment, and that levy was thereafter made upon the said interest of said Hanley in said claim, and notices of sale given; that in order to protect the rights of the plaintiff in and to said property it will be necessary for the plaintiff to become a bidder at said sale; that the Federal Mining Company has lately and during the year 1909 uncovered a large and valuable body of ore in said Skookum Mining Claim, the location and situation of which is unknown to the plaintiff, and that it is necessary for the plaintiff to make an examination and inspection of said ore body, in order to determine the amount which he can properly bid at said execution sale.

It is further alleged that the plaintiff will probably be the only bidder at said sale, and that it will be necessary for him to buy the said interest of Hanley, and apply the same on said judgment, and that he has an interest in and to said mining claim; that he has made a demand in writing upon defendant Federal Mining Company, setting forth his said interest in said mining claim, and the necessity for an inspection and survey of same, and demanding permission to make such inspection and survey, and that the defendant has refused to permit said examination and inspection.

These are the material allegations of the complaint. It is contended on the part of the respondent that the complaint is insufficient, for the reason that it fails to show a sufficient interest in the plaintiff to authorize or empower the court to make an order requiring the defendant to permit inspection and survey. The appellant, however, contends that the allegation that the plaintiff is a judgment creditor of Hanley, and that it will be necessary for him to bid at execution sale in order to protect his judgment, is a sufficient allegation of interest to authorize and empower the court to make an order permitting inspection and survey.

The contention of appellant is based upon the general equity powers of the court, and also upon the provisions of sec. 4542 of the Rev. Codes. This section reads as follows: "Any person having a *bona fide* claim to the possession, title of, or interest in, any real property or mining claim, including any ledges thereof, which is, or which he has a good reason to believe is, in the possession of another, either by surface or underground holdings or workings, and it is necessary for the ascertainment, enforcement or protection of such rights or interests, that an examination or survey of such property be had, and the person so in the possession thereof, fails or refuses for three days after demand on him made in writing, to permit such examination or survey to be made, the party desiring the same may apply to the court or the judge thereof, whether he have an action concerning such property pending in such court or not, for an order for such examination and survey."

This section of the statute is merely a legislative declaration of what has been recognized as the general equity powers of the court, and is intended to enable a person who claims possession, title to, or interest in any real property or mining claim, to make examination and inspection of the property, for the purpose of protecting and preserving such possession, title, or interest in such property. (*St. Louis Mining & Milling Co. v. Montana Co.,* 9 Mont. 288, 23 Pac. 510, 152 U. S. 160, 14 Sup. Ct. 506, 38 L. ed. 398; 2 Lindley on Mines, sec. 873; Costigan on Mining Law, sec. 148; Barringer & Adams on the Law of Mines and Mining, p. 739.)

Our attention has not been called to any case, and we have been unable to find any in which a court has held that either in the exercise of the court's equitable jurisdiction, or by virtue of the powers conferred under similar statutes, relief should be granted to an applicant in the absence of a showing that the applicant had a *bona fide* claim to the possession, or title to, or interest in, the property sought to be protected. On the contrary, the authorities all hold that the claim to possession, or title to, or interest in real property or a mining claim, must be an actual right, a real in-

terest.  (*State ex rel. Geyman v. District Court,* 26 Mont. 433, 68 Pac. 797; *St. Louis Mining & Milling Co. v. Montana Co.,* 152 U. S. 160, 14 Sup. Ct. 506, 38 L. ed. 398; *People v. De France,* 29 Colo. 309, 68 Pac. 267.)

The allegation that the plaintiff is a judgment creditor, and has caused execution to issue upon said judgment, and to be levied upon said property, does not show that the plaintiff is entitled to the possession of said property, or has any title to or interest in the same.

By the statute of this state the judgment obtained by the plaintiff became a lien on all real property of the judgment debtor, and the issuance of an execution upon said judgment, and the levying of such execution upon any specific property, or any particular interest in property, simply gave to the plaintiff a right to have such property, or such particular interest in property, sold to satisfy such judgment.

Property sold under execution is required to be sold to the highest bidder, and if the plaintiff is given permission, by an order of court, to enter upon said premises and inspect the same, there would thereby be granted to plaintiff an advantage which would not be given to any other bidder at such sale.  In other words, the plaintiff by the information thus obtained might be able to prevent any competitive bidding, and make it possible for the plaintiff to secure the property at much less than it would otherwise be sold for, had all bidders been placed upon an equality.

Referring again to the statute, we find that it is also provided therein, that the order for inspection and examination may be made when it is necessary for the ascertainment and enforcement or protection of the right or interest of the applicant.  In other words, the complaint must not only allege a state of facts which shows that the plaintiff has a *bona fide* claim to the possession, title to, or interest in the property, but the plaintiff must also allege a state of facts showing a necessity for the inspection and examination of the property.

In the complaint under consideration there are no facts alleged which show any necessity for the inspection and examination in order to enforce or protect any rights of the plaintiff. There is no allegation of injury or threatened injury to the property or depreciation of its value. The mere fact that the plaintiff will probably be the only bidder at the execution sale, and in order to exercise proper judgment as to the amount he would bid, it is necessary that he inspect and examine said property, is not an allegation of a state of facts showing a necessity for such examination in order to protect any right or interest he may have in or to said property.

So far as it appears from the complaint, the judgment debtor may have sufficient other property upon which the judgment is a lien, and which may be levied upon to satisfy the same, even though the property previously levied upon does not invite any bidders whatever, and the plaintiff may be able to enforce his claim against the judgment debtor by the sale of such other property, and be fully protected in his claim.

We think the complaint fails to state a cause of action, and that the trial court did not err in sustaining the demurrer.

There is another matter that it seems proper to refer to, inasmuch as there is printed in the record an affidavit made by counsel for plaintiff alleging certain facts, purporting to show a necessity for granting the prayer of the complaint, and such affidavit is referred to by counsel for appellant in his brief. This affidavit, however, has no place in the record, and could not have been considered by the trial court in determining the sufficiency of the complaint. The sufficiency of the complaint is to be determined upon the demurrer, and the affidavit in support of the complaint was no part of the same, and could not have been considered in determining its sufficiency.

The judgment is *affirmed.* Costs are awarded to respondent.

Ailshie, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached by my associates. The appellant is the judgment creditor of an owner of one-eighth interest in the Skookum mining claim; the respondent, the Federal Mining Co., owns the other seven-eighths interest. To enforce said judgment, which is for more than $50,000, execution has been levied upon the one-eighth interest in said mining claim belonging to the judgment debtor. That one-eighth interest is in the custody of the law by reason of levying such execution. So far as the record shows, the judgment debtor raises no objection to the appellant, who is judgment creditor, inspecting said mine in order that he may intelligently bid for said property at the execution sale. In the opinion of my associates it is held that sec. 4542, Rev. Codes, contains the only authority and power of a court of equity to grant an inspection of real property; that the provisions of that section are only a declaration of what has been recognized as the general equity powers of a court, and that a person to be entitled to an inspection must have a *"bona fide* claim to the possession, title of or interest in any real property or mining claim including any ledges thereof," etc., and since the appellant is only an execution creditor he has no *"bona fide* claim to . . . . or interest in" said mining claim, therefore a court of equity has no power to order an inspection. In support of the rule there laid down, my associates cite the following authorities: *St. Louis Mining & Milling Co. v. Montana Co.*, 9 Mont. 288, 23 Pac. 510, 152 U. S. 160, 14 Sup. Ct. 506, 38 L. ed. 398; 2 Lindley on Mines, sec. 873; Costigan on Mining Law, sec. 148; Barringer & Adams on the Law of Mines and Mining, p. 739, all of which refer to mining claims, and none of which involves the question presented in the case at bar.

In the St. Louis M. & M. Co., above cited, it appears that the St. Louis Co. and the Montana Co. owned adjoining claims; that the Montana Co. had constructed shafts, tunnels, stopes and drifts on its own property, and it was the contention of the St. Louis Co. that from those shafts, tunnels and

drifts the Montana Co. had crossed the line of their own property and gone into the mining claims of the St. Louis Co. and had extracted large quantities of ore therefrom, and it was alleged that it was necessary for the St. Louis Co. to make an inspection and surveys of the underground workings alleged to have been made on the St. Louis Co.'s claims, and it was necessary in order to make that inspection and survey for the St. Louis Co. to enter upon the mining claims, in which they claimed no interest, and go down the shafts into the tunnels and drifts that the Montana Co. had constructed on its own ground in order to get into the workings alleged to have been made on the St. Louis Co.'s grounds. The St. Louis Co. claimed no *bona fide* right to the possession of or title to or interest in the mining claim on which such shafts and tunnels were made, and the court granted the right to enter into said shafts and tunnels and to inspect and make surveys for the purpose of ascertaining the extent of the work, if any, that the Montana Co. had done upon the St. Louis Co.'s ground. That action of the court was sustained both by the supreme court of Montana, and the supreme court of the United States. That proceeding was brought under sec. 376 of the Code of Civil Procedure of Montana, which section is in part as follows:

"Whenever any person shall have any right to or interest in any lead, lode, or mining claim which is in the possession of another person, and it shall be necessary for the ascertainment, enforcement, or protection of such right or interest that an inspection, examination, or survey of such mine, lode, or mining claim should be had or made; or, whenever any inspection, examination, or survey of such lode or mining claim shall be necessary to protect, ascertain, or enforce the right or interest of any person in another mine, lead, lode, or mining claim, etc."

That section is not identical with said sec. 4542 of our Rev. Codes, and that decision is not in point in the case at bar. That section of the Montana statute was attacked as unconstitutional, as being unjust and oppressive, as authorizing a trespass upon private property. The petitioner

claimed no right to the possession of or title to an interest in the mining claims on which said shaft was constructed. Both the supreme court of Montana and the supreme court of the United States held that statute constitutional. The decision by the supreme court of Montana is well considered and many authorities are cited, both English and American. In the course of the decision the court said:

"It will be seen that the order of the court below followed an unbroken line of precedents. The rule of equity which has been enforced by the courts of England and America is not of statutory growth. In this state the legislative department has indorsed the chancery practice involved in this hearing with the form of law. We are not called on to decide that the district courts of the state may make the order complained of, in the absence of any requirement of the Code of Civil Procedure. We can vindicate with absolute certainty the existence of the right to make an order for the inspection and survey of a lode mining claim, where the appropriate steps have been taken by interested parties. The authorities treat the proceedings as the proper mode of securing 'the best evidence of which the case in its nature is susceptible.' There is not an assertion or suggestion by any jurist that rights of property are impaired or transgressed by the making of the orders for an inspection and survey. . . . . We have stated that the power of the courts of England over this matter was exercised as a branch of their chancery jurisdiction. In 1854 the common-law procedure act was created, and the fifty-eighth section provides that 'either party shall be at liberty to apply to the court or a judge for a rule or order for the inspection by the jury or by himself, or by his witnesses, of any real or personal property, the inspection of which may be material to the proper determination of the question in dispute; and it shall be lawful for the court or a judge, if they or he think fit, to make such rule or order.' "

The application in that case was made before any suit was brought to determine the rights of the parties. It is stated in the opinion as follows:

"The bare fact that the St. Louis Mining & Milling Company of Montana petitions for an inspection and survey of the mining property referred to before its complaint has been filed is immaterial."

In *Winslow v. Gifford*, 6 Cush. (Mass.) 327, it is held that an act of the legislature is not unconstitutional which authorized certain parties to go upon private lands and make surveys and establish boundaries. It is there said:

"In effecting such an object, there may be, and often is, a brief, and, as it were, momentary, interference with the absolute right of the owner of real estate. This exercise of power, in its various forms, is one of every day's occurrence; indeed, so common as to be acquiesced in without remonstrance, or even a question as to the right so to do."

In the *St. L. M. & M. Co. v. Montana M. Co.* case the only question presented to the United States supreme court was whether the right to inspect was in violation of any of the provisions of the constitution and that court held that it was not. (152 U. S. 160, 14 Sup. Ct. 506, 38 L. ed. 398.) Justice Brewer in delivering the opinion in that case says: "Inspection orders like this have been frequently made, sometimes under the authority of special statutes and sometimes by virtue only of the general powers of a court of equity," and cites numerous cases in support of that proposition and quotes from *Thornburgh v. Savage M. Co.*, Fed. Cas. No. 13,986, as follows: "The very great powers with which a court of chancery is clothed were given it to enable it to carry out the administration of nicer and more perfect justice than is attainable in a court of law." The court further said: "It was conceded that such entry and occupancy created a slight trespass upon the absolute right of the owner to an undisturbed and exclusive use of his real estate, but it was held that if the occupancy was reasonably necessary for some public purpose, was temporary, and with no unnecessary damage, it carried no right to compensation. All these cases involve some invasion of the rights of the owner to the possession and use of his property, yet the necessities of justice seem to compel it. . . . . But by an inspection neither the title

nor the general use is taken, and all that can be said is that there is a temporary and limited interruption of the exclusive use. And it is in that light that the question of the validity of this statute is to be determined.''

And again: "It is objected that the statute does not define the quality of 'right to or interest in' the mining claim which entitles to an inspection. But does the amount of a party's interest determine the question of the constitutionality of a statute passed to enable an accurate determination thereof? Suppose it be true that a petitioner has but a limited interest in a mine, has not that petitioner a legal right to the protection of that interest equal to that of the other owners? Has he not the same constitutional right to any means of ascertaining and enforcing that interest that belongs to any other party interested in the mine? Indeed, it may be said to be generally true that the weaker a party and the smaller his interest the greater the need of the strong hand of the court to ascertain and protect his rights. It is true, the quality of the right or interest is not defined, but it must, in order to come within the statute, be a 'right to or interest in' the mining claim. The language is general and comprehensive, because the intent is to include within its purview every actual right, every real interest.''

The appellant has a real interest in said one-eighth interest in said mining claim, in that as his execution is levied in said interest he has the actual right to have his judgment satisfied out of said interest, and it is not for the respondent, who is the judgment creditor's cotenant, to say that appellant shall not have the fruit of his judgment.

So, under the provisions of said sec. 4542, any person having a "*bona fide*" interest, no difference how small, in any real property, has the right, upon a proper showing, to an inspection thereof, and I maintain that a judgment creditor who has levied his execution upon real property has a substantial interest in such property, and when it is necessary to protect his interests at the execution sale, he has a right upon proper showing to an order for the inspection

of such property. It is a remarkable proposition to me that a court of equity has not the general power without any statute authorizing it to order an inspection of property that has to be sold at execution, where the owner is not objecting and the cotenant, who has no right to object to the sale of the property on execution, may defeat such inspection by refusing to grant it. If this be true, it might well be said that the arm of equity is too weak to secure to a litigant justice.

In *United States v. Nourse,* 9 Pet. (U. S.) 8, 9 L. ed. 31, the supreme court of the United States defined the word "execution" as "that which gives the successful party the fruit of his judgment." It is also defined as the "end of the law; the act of carrying into effect the judgment or decree." (17 Cyc. 921.) The sole aim and object of an execution is to secure the judgment creditor the fruit of the litigation. According to my associates' theory, the court had jurisdiction to render the judgment but has no jurisdiction to see that the execution sale is so conducted as to give the creditor the fruit of his litigation. The question arises, would the sale under execution without the inspection asked by appellant secure him the fruit of his suit? The facts are that the plaintiff has a judgment exceeding $50,000 against Hanley, who owns an undivided one-eighth interest in the Skookum mining claim. Appellant filed his affidavit stating that he was advised and believed that he will be the only bidder at the sale. The value of the Skookum claim is problematical. The one-eighth interest of Hanley therein may be worth a million dollars or it may not be worth thirty cents. The appellant could not bid intelligently at the sale without an inspection of the mine. How could he therefore obtain the fruit of his suit at the end of said execution? As before stated, at least Hanley's interest in said property is *in custodia legis.* Under the provisions of sec. 4477, Rev. Codes, real property or any interest in real property "may be attached on execution in like manner as upon writs of attachment," and after the execution is levied, the real property upon which it is levied is in the custody of the law.

While inadequacy of price alone is not sufficient grounds for setting aside an execution sale, if the price is grossly inadequate the presumption of fraud arises, and the sale will be set aside. (2 Freeman on Executions, 2d ed., sec. 309.) Where a purchaser has, by mistake, given an unreasonable price for an estate, the court will, in a proper case, wholly rescind the contract. (Id., sec. 304.) Nothing but an inspection can determine the value of the property so that the judgment creditor can make an intelligent bid.

It is clear to me that a fair and just sale can be had of said interest under execution only after an examination of the claim. The law contemplates a fair and just sale under execution, and no such sale can be had without knowing something about the property to be sold and its market value. It is not the intention of the law under execution sales to require the property to be sold as was the proverbial pig which was put in a poke so that no one could examine it before the sale. The trial court that rendered said judgment still has the inherent power upon a proper showing to compel a fair and just sale of property under execution issued to enforce said judgment. In Lindley on Mines, sec. 873, the author, after referring to numerous statutes authorizing an inspection of mines in certain cases, states: "Independent of any state legislation as an aid to discovery in pending actions, the power to order an inspection of real property has long existed in the courts of equity," and quotes with approval from *Thornburgh v. Savage M. Co.,* Fed. Cas. No. 13,986. Is not the importance of an inspection in the present case as great as the inspection of a mine in order to ascertain whether certain rights are being violated? While I have no doubt that a court of equity has ample power under the facts of this case to order an inspection, I believe with a fair construction of sec. 4542, Rev. Codes, the court has ample authority under its provisions to make such an order as prayed for by the appellant, and if its provisions are not broad enough, a court of equity has ample power on proper showing to order an inspection of any real property about to be sold under execution. It is held by numerous.

authorities that such power is not derived from the statute alone. In *Platt v. Bright,* 31 N. J. Eq. 81, referring to said right, the court stated: "It arises independently of it [the statute], from the necessities of the administration of justice, and is inherent in this court."

It must not be overlooked in this case that this proceeding is against a cotenant who has no interest in the judgment against Hanley, and it should not be permitted to defeat the appellant from securing the results of his judgment against Hanley, thus preventing Hanley from realizing all that his one-eighth interest in said mining claim is fairly worth, to be applied on his debt due to appellant. The action of the court ought to be reversed and an order to inspect said mine granted.