The **WISCONSIN STUDENT ASSOCIATION**, a non-stock corporation, member of the National Student Association, **Margery Tabankin, William Kaplan, Charles Himes and David Schaefer, Plaintiffs,**

v.

The **REGENTS OF the UNIVERSITY OF WISCONSIN et al., Defendants.**

No. 69–C–281.

United States District Court,
W. D. Wisconsin.

Oct. 13, 1970.

**592**

Jack F. Olson, Madison, Wis., for plaintiffs.

Charles A. Black, Asst. Atty. Gen., Madison, Wis., for defendants.

Before FAIRCHILD, Circuit Judge, and DOYLE and GORDON, District Judges.

MYRON L. GORDON, District Judge.

The plaintiffs challenge the constitutionality of § 36.49 of the Wisconsin statutes and also a regents' rule which is reported in the Wisconsin administrative code as § UW 1.07(9). The complaint seeks a declaration that both the statute and the rule are unconstitutional and also asks that the defendants be enjoined from enforcing such provisions.

A three-judge court was convened in this case. After the submission of briefs, the court determined that no evidentiary hearing was necessary for a proper determination of the controversy. The plaintiffs have moved for judgment on the pleadings. The defendants have filed a motion to dismiss the plaintiffs' complaint. This opinion will resolve such motions and also the issues presented by the complaint and the answer.

Prior to the commencement of the instant action, three of the four individual plaintiffs, Margery Tabankin, William Kaplan and Charles Himes, were charged with a violation of § 36.49 in the county court of Dane County, Wisconsin. Before the three-judge court was convened, Judge Doyle entered an order on January 12, 1970 restraining the defendants from "further enforcement" of § 36.49.

The statute in question was adopted by the state legislature as chap. 27 of the laws of 1969 and was published on May 15, 1969. It provides as follows:

"36.49 SOUND – AMPLIFYING EQUIPMENT. (1) Any person who utilizes sound-amplifying equipment in an educational or administrative building owned or controlled by a state institution of higher education under this chapter or ch. 37, or upon the grounds of such an institution without the permission of the administra-

tive head of the institution or his designee, may be fined not more than $100 or imprisoned not more than 30 days, or both.

"(2) In this section 'sound-amplifying equipment' means any device or machine which is capable of amplifying sound and capable of delivering an electrical input of one or more watts to the loudspeaker."

On August 22, 1969, the regents adopted a rule implementing the Wisconsin statute. On October 17, 1969, the regents passed a "statement of intent" to clarify the rule. In June, 1970, the regents embraced a new rule regarding the use of sound-amplification equipment. Each of the three rules passed by the regents appears as an appendix to this opinion.

## SPECIAL DEFENSES

■ The defendants' answer advances a number of affirmative defenses, including the charge that the plaintiff, Wisconsin Student Association, is not a proper party since it is a corporation; the defendants urge that a corporation is not a person within the meaning of 28 U.S.C. § 1343.

In Smith v. Board of Education of Morrilton School Dist. No. 32, 365 F.2d 770 (8th Cir. 1966), a corporation, the Arkansas Teachers Association, was held to be a proper party plaintiff in an action involving the same statute which is now before us, 28 U.S.C. § 1343. Speaking on behalf of the court of appeals, Judge Blackmun concluded that the corporation had standing to sue. He pointed out that the individual plaintiff in that case might have lost interest in the litigation if he were to change his employment; this would also be true in the case at bar if the individual plaintiffs, all of whom are students, were to leave the university.

In a case that was not brought under § 1343, the court made the following ruling in N.A.A.C.P. v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed. 2d 405 (1963):

"We think petitioner may assert this right on its own behalf, because, though a corporation, it is directly engaged in those activities, claimed to be constitutionally protected, which the statute would curtail."

Other cases which tend to support a finding that the plaintiff corporation has standing to bring the instant action are N.A.A.C.P. v. Alabama ex rel. Patterson, 357 U.S. 449, 458–460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) and National Student Association v. Hershey, 134 U.S.D.C. 56, 412 F.2d 1103, 1120 (1969).

The defendants also allege as an affirmative defense that the university has made available to the plaintiff "adequate facilities where sound-amplification equipment may be employed * * *." In our opinion, this is not a valid defense; if the statute is unconstitutional on its face, such inherent defect would not be cured by the existence of "adequate facilities" somewhere on the university campus.

As another defense, the defendants maintain that § 36.49 is, in effect, surplusage because the legislature previously had provided the regents with broad authority to regulate the affairs of the university in § 36.06(1), Wis.Stats. In our view, the presence of independent authority for the regents to deal with sound-amplification equipment cannot by itself validate § 36.49; if the latter section is facially unconstitutional, it is the duty of this court to so declare it.

The defendants further urge as an affirmative defense that the resolution adopted by the regents under date of October 17, 1969 "did not amend or affect the validity" of the rule previously adopted by the regents on August 22, 1969. In June, 1970 the regents adopted a new rule; since it is stipulated that the latter rule supersedes both of the earlier regulations, we find it unnecessary now to determine whether there was any invalidity in either of the two earlier pronouncements. The validity of the 1970 rule has not been challenged in this suit.

Paragraph 30 of the complaint states that "the Regents have directed that steps be taken to commence University disciplinary proceedings" against three of the plaintiffs based on a November 13, 1969 incident. However, no further showing has been made here that the controversy between the plaintiffs and the defendants with respect to the earlier regents' rules is sufficiently real to support either a declaratory judgment or injunctive relief.

■ The defendants also claim that certain of the plaintiffs "are not citizens of the state of Wisconsin and have no standing" to bring this action. No authority is advanced by the defendants in support of this contention, and we do not perceive any merit in it. The complaint alleges that each of the four individual plaintiffs "resides in the city of Madison, Wisconsin" and also, that each is "a student at the University of Wisconsin, Madison, Wisconsin". Jurisdiction of this action is not based upon diversity of citizenship. The defendants have not sought an evidentiary hearing in support of their contention that the plaintiffs are not citizens of Wisconsin.

■ Another preliminary defense that the court will consider briefly is the defendants' claim that the plaintiffs are foreclosed from bringing this action because it is a suit against a state. We find this argument to be unsound. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). In Louisiana State Board of Education v. Baker, 339 F.2d 911 (5th Cir. 1964), the court said (at p. 911):

"We hold that the Eleventh Amendment provides no haven for a state agency when it violates federally protected Constitutional rights."

## THE ABSENCE OF STANDARDS

■ The principal issue before this court is whether § 36.49 violates the right to freedom of speech in delegating to an "administrative head of the institution" the unrestricted discretion to decide whether sound equipment may be used. Our reading of the statute in question persuades us that it authorizes a restraint upon freedom of speech without setting any objective standards to govern the exercise of discretion by the administrative officer; therefore, § 36.49 is unconstitutional.

■ A properly drawn statute or ordinance may lawfully restrict the objectionable amplification of sound. Thus in Kovacs v. Cooper, 336 U.S. 77, 87–88, 69 S.Ct. 448, 453–454, 93 L.Ed. 513 (1949), the court said:

"* * * We think it is a permissible exercise of legislative discretion to bar sound trucks with broadcasts of public interest, amplified to a loud and raucous volume, from the public ways of municipalities. * * * The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislatures to be insensible to claims by citizens to comfort and convenience."

In Wollam v. City of Palm Springs, 59 Cal.2d 276, 20 Cal.Rptr. 1, 5, 379 P.2d 481, 485 (1963), the court observed that "within constitutional limitations" state and local governments could protect the tranquility of a community by restricting the use of sound trucks.

The absence of standards, however, is fatal to the statute at bar. In our opinion, a finding of unconstitutionality is required under Saia v. New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948). There, the court examined a city ordinance which required that a permit be obtained from the chief of police and stated (at pp. 559–560, 68 S.Ct. at p. 1149):

"We hold that § 3 of this ordinance is unconstitutional on its face, for it establishes a previous restraint on the right of free speech in violation of the First Amendment which is protected by the Fourteenth Amendment against State action. To use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the ex-

ercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted."

In demanding that government narrowly delimit the right to use loudspeakers, *Saia* has but applied the well-established judicial protection which we afford to the "prized American privilege to speak one's mind". Bridges v. California, 314 U.S. 252, 270, 62 S.Ct. 190, 197, 86 L.Ed. 192 (1941). Justice Brandeis, in Whitney v. California, 274 U.S. 357, 376, 47 S.Ct. 641, 71 L.Ed. 1095 (1927), observed that our founding fathers "eschewed silence coerced by law." At times our dedication to the protection of this basic first amendment right can be singularly unpleasant. See Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). Justice Holmes noted that we must provide "freedom for the thought we hate." United States v. Schwimmer, 279 U.S. 644, 655, 49 S.Ct. 448, 451, 73 L.Ed. 889 (1929).

The objective standards which the court found omitted in *Saia* are also strikingly absent in the statute at bar; regarding the use of sound-amplifying equipment, § 36.49 does not purport to spell out (1) the hours during which loudspeakers can be used; (2) the places where such equipment may be employed; or (3) the volume of sound to be employed in the loudspeakers.

An ordinance which regulated the use of sound equipment was before the court in Chester Branch NAACP v. City of Chester, 253 F.Supp. 707 (E.D.Pa.1966); there the court weighed the application of *Saia* and *Kovacs* and concluded that it was not constitutionally objectionable for the ordinance to require that a permit be secured from the city clerk because "the ordinance makes it clear that his function is purely ministerial". Although the ordinance was invalidated because the fee of $25.00 for the issuance of the permit was found unreasonable, the court went on to observe that "the issuance of the disputed permits is based on clear, non-discriminatory and non-discretionary standards beyond the control of any local official." This cannot be said of § 36.49, which on its face grants unfettered authority to an official to exercise his discretion without specifying any controlling standards.

In giving an administrative officer the power to reject an application for a permit by exercising his unlimited discretionary power, the statute at bar clearly runs afoul of the doctrine stated in Kunz v. People of State of New York, 340 U.S. 290, 293, 71 S.Ct. 312, 314, 95 L.Ed. 280 (1951):

" * * * It is noteworthy that there is no mention in the ordinance of reasons for which such a permit application can be refused. This interpretation allows the police commissioner, an administrative official, to exercise discretion in denying subsequent permit applications on the basis of his interpretation, at that time, of what is deemed to be conduct condemned by the ordinance. We have here, then, an ordinance which gives an administrative official discretionary power to control in advance the right of citizens to speak on religious matters on the streets of New York. As such, the ordinance is clearly invalid as a prior restraint on the exercise of First Amendment rights."

The court went on to comment at pp. 293–294, 71 S.Ct. at p. 315:

" * * * Although this Court has recognized that a statute may be enacted which prevents serious interference with normal usage of streets and parks, Cox v. State of New Hampshire, 1941, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049, we have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places."

We find no force in the argument that § 36.49 should be sustained because the required standards can be found in the June, 1970 rule adopted by

the regents. The presence of adequate standards protects the regulation itself from invalidity, but it can not ameliorate the intrinsic deficiency found in the statute. As the court noted in Montana Co. v. St. Louis Mining & Milling Co., 152 U.S. 160, 169–170, 14 S.Ct. 506, 38 L.Ed. 398 (1894), the constitutional validity of a law is to be tested by what may be done pursuant to its authority. See also Wuchter v. Pizzutti, 276 U.S. 13, 24, 48 S.Ct. 259, 72 L.Ed. 446 (1928); Anderson v. Carlson, 171 Neb. 741, 107 N.W.2d 535, 540 (1961).

## INJUNCTIVE RELIEF

In an order dated January 12, 1970, Judge Doyle, sitting as a single district court judge, restrained the defendants with regard to § 36.49 "from further enforcement against any of the plaintiffs". Prior to the commencement of the federal court action, three of the plaintiffs had been charged in the county court with an alleged violation of § 36.49, and their cases are still pending.

The "anti-injunction statute", 28 U.S.C. § 2283, provides that federal courts may not "stay proceedings in State courts"; the statute contains certain express exceptions which are not relevant here. The United States Supreme Court has twice expressly reserved its ruling as to whether § 2283 is applicable to actions brought under the civil rights act. Cameron v. Johnson, 390 U.S. 611, 614 n. 3, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) and Dombrowski v. Pfister, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

In the absence of any final determination of the matter by the United States Supreme Court, Judges Fairchild and Doyle are of the opinion that in a clear case involving the facial invalidity of a statute regulating freedom of speech, such as is present in the case at bar, it is proper to stay pending state court proceedings. Thus, a majority of this court concludes that the restraining order heretofore entered in this case should be made permanent.

The writer of this opinion, however, would vacate the restraining order under the authority of Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943) and Goss v. State of Illinois, 312 F.2d 257 (7th Cir. 1963). In Dombrowski v. Pfister, 380 U.S. 479, 485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965), the court found "special circumstances to warrant cutting short the normal adjudication of constitutional defenses in the course of a criminal prosecution."

In the minority view of the writer, the threat of sanctions which justified an injunction in *Dombrowski* to protect the right of expression is not to be found in the case at bar. Although this court has not passed on the validity of the regents' new rule, adopted in June, 1970, I believe that there is now less reason to anticipate any future chilling effect to arise from § 36.49; in view of the new rule, the right to enjoy freedom of speech under § 36.49 will not have "to be hammered out case by case—and tested only by those hardy enough to risk criminal prosecution to determine the proper scope of regulation." (*Dombrowski*, p. 487, 85 S.Ct. p. 1121).

## CONCLUSION

In view of the foregoing, the court concludes that the defendants' motion to dismiss must be denied. The plaintiffs are entitled to an order granting their motion for judgment on the pleadings and declaring that § 36.49, Wis.Stats., is unconstitutional because of its contravention of the first amendment of the United States Constitution. The restraining order heretofore entered on January 12, 1970 shall be made permanent.

An order is being entered contemporaneously with the filing of this opinion.

## ORDER

The three-judge court convened in this case having on this date filed its opinion,

It is now ordered and adjudged:

1. That the defendants' motion to dismiss be and hereby is denied.

2. That the plaintiffs' motion for judgment on the pleadings be and hereby is granted and that § 36.49, Wis.Stats., be and hereby is declared invalid for its violation of the first amendment of the United States Constitution.

3. That the restraining order heretofore entered in this case on January 12, 1970 be and hereby is made permanent.

## APPENDIX I

Regents' Rule, August 22, 1969:

(9) (a) Section 36.49 Wis.Stats. provides: "(1) Any person who utilizes sound-amplifying equipment in an educational or administrative building owned or controlled by a state institution of higher education under this chapter * * *, or upon the grounds of such an institution without the permission of the administrative head of the institution or his designee, may be fined not more than $100 or imprisoned not more than 30 days, or both.

(2) In this section 'sound-amplifying equipment' means any device or machine which is capable of amplifying sound and capable of delivering an electrical input of one or more watts to the loudspeaker."

(b) For the purpose of section 36.49 Wis. Stats., the "administrative head of the institution or his designee" shall mean the chancellor or the dean of any campus, or in the case of arboretums, experiment stations or other areas not part of a campus under the supervision of a chancellor or dean, the university official in charge.

(c) In granting or denying such permission, the following principles shall govern:

1. The applicant shall have the burden of establishing need for amplification to communicate with the anticipated audience.

2. No censorship or discrimination shall be exercised.

3. The volume of sound shall not unreasonably interfere with the instructional, research and administrative functions of the university.

(d) A request for the permission required by section 36.49 Wis. Stats. shall be submitted in writing to the person specified in subsection (b) of this section at least 24 hours prior to the intended use of the sound-amplifying equipment. Such request shall contain:

1. The proposed hours, date and location where the sound-amplifying equipment is to be used;

2. The purpose of the use, the size of the anticipated audience and the reasons why sound-amplifying equipment is needed;

3. A description of the proposed equipment which includes the manufacturer, model number, and wattage;

4. The names of the owner of the equipment and of the person who will be responsible for its operation.

If permission is granted, the applicant shall, notwithstanding the provisions of Wis. Adm. Code section UW 1.07 (6), post a sign visible to the audience stating: "Permission to use sound-amplifying equipment at this meeting has been granted."

(e) Specific requests for the permission shall not be required for the use of university-owned sound-amplifying equipment to be used with the permission of the university employee having control of the equipment 1. for authorized university classes, 2. for authorized university research, 3. for meetings of faculty or administrative staff, 4. for other authorized meetings in University buildings, 5. for university-sponsored academic, recreational or athletic activities or 6. for crowd control by authorized university officials.

## APPENDIX II

Regents' Statement of Intent—October 17, 1969:

To clarify an apparent misunderstanding that has arisen as to the intent of the Regents in adopting Section 1.07(9)

of the Administrative Code and the incidents of use of sound amplification equipment which are to be permitted thereunder, this statement of intent is adopted.

The provisions of Section 36.49, Wisconsin Statutes, clearly indicate that sound amplification equipment at the University is to be limited in use. Section 1.07(9) further conveys this intent by providing that the use of sound amplification equipment is to be prohibited except where an express need for such equipment is shown by the requesting party.

It is the intent of the Regents that the use of sound amplification equipment shall be prohibited on any campuses within the University system unless substantial cause can be shown by the requesting organization or individual for the use of such equipment. It is to be anticipated that this burden would be sustained by a requesting organization or individual only in exceptional cases. Such exceptional cases would involve only events of an all campus nature requiring a broad dissemination of information in order to sustain the event. Examples of such events would include Homecoming, Campus Carnival or other similar events of an all campus nature.

Except in extremely unusual circumstances, it is not contemplated that permits for use of sound amplification equipment will be granted for any rallies or meetings sponsored by politically oriented groups regardless of their political point of view.

It is the intent of the Board of Regents that the use of sound amplification equipment on any campus within the University system shall be limited to those instances where substantial cause can be shown for use of such equipment to communicate with an all campus audience, and all administrative personnel having authority to issue permits under Section 1.07(9) are hereby instructed to act in accordance with such intent.

## APPENDIX III

Regents' Rule, June, 1970:

(8) Sound-Amplifying Equipment. (a) In order to permit the use of sound-amplifying equipment on university campuses, if needed for the dissemination of ideas to large audiences, but to prevent its use from interfering with university functions which inherently require quiet, the following provisions shall apply:

1. No person may use sound-amplifying equipment on any campus without the permission of the administrative head of that campus except as provided in subsection (c) of this section. For the purpose of this section, the "administrative head" shall mean the chancellor or the dean of any campus, or, in the case of arboretums, experimental stations or other areas not part of a campus under the supervision of a chancellor or dean, the university official in charge, or, in the absence of the "administrative head" as heretofore defined, it shall mean the person authorized to act on behalf of such "administrative head" in his absence.

2. In granting or denying such permission, the following principles shall govern:

a. Except in extraordinary circumstances, specified in advance by the administrative head of the campus, permission may be granted to use such equipment only during the hours of 4:30 p. m. to 10:00 p. m. on Monday through Friday, and noon to 10:00 p. m. on Saturday and Sunday, and only when the equipment is more than 50 feet from and directed away from any classroom building, residence halls, library or facility being used as a study hall. These are the times and places which will result in the least interference with other activities on the campus.

b. The applicant for permission shall have the burden of establishing the need for amplification to communicate with the anticipated audience. In particular, he must show that the audience can rea-

sonably be anticipated to include at least 250 people.

c. The applicant for permission shall have the burden of establishing that the volume and direction of the sound from the equipment will be such as to reduce interference to other activities on the campus to a minimum.

3. Any request for the permission required by this section must be submitted in writing to the person specified in subsection 1. of this section at least 24 hours prior to the intended use of the sound-amplifying equipment, and must be signed by a student or employee of the university on the campus where the equipment is to be used. Such request shall contain:

a. The proposed hours, date and location where the equipment is to be used.

b. The size of the anticipated audience and the reasons why the equipment is needed.

c. A description of the proposed equipment which includes the manufacturer, model number, and wattage.

d. The names of the owner of the equipment and of any person or persons, in addition to the person signing the application, who will be responsible for seeing that the equipment is operated in compliance with the terms of the permit and the provisions of this rule (the administrative head of the campus may require such additional persons if he believes this necessary to assure compliance).

(b) If permission is granted by the administrative head the applicant shall, notwithstanding the provisions of Wis. Adm. Code section UW 1.07(5), post a sign visible to the audience stating: "Permission to use sound-amplification equipment at this meeting (sporting event) has been granted."

(c) Permits issued by the administrative head shall not be required for the use of university sound-amplifying equipment to be used with the permission of the university employee having control of the equipment for authorized university classes, for authorized university research, for meetings of faculty or administrative staff, for other authorized meetings in university buildings, for university-sponsored academic, recreational or athletic activities, or for crowd control by authorized university officials.

(d) For the purpose of this section, "sound-amplifying equipment" means any device or machine which is capable of amplifying sound and capable of delivering an electrical input of one or more watts to the loudspeaker.