STATE EX REL. ANACONDA COPPER MINING COMPANY, RELATOR, *v.* DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT ET AL., DEFENDANTS.

(No. 1,759.)

(Submitted January 10, 1902. Decided April 14, 1902.)

*Mines and Mining—Inspection and Survey of Claim—Interest Necessary—Equity Powers of Court—Order of Inspection —Jurisdiction—Statutory Construction.*

1. To entitle one, under Code of Civil Procedure, Sec. 1317, to an inspection of a claim for the purpose of ascertaining or enforcing his right or interest in another claim, he must have an interest in the first claim, and that the right of one owning a claim to follow a lode having its apex therein into another claim is not such an interest in the latter claim as to authorize his inspection and survey of it.

2. Equity has no jurisdiction, independent of statute, and in the absence of a suit, to order inspection of property.

3. Under the authority in Code of Civil Procedure, Sec. 1317, to order inspection of a mine to ascertain and protect the interest of petitioner, all the appliances in use for ingress and egress may be made available for the persons making the inspection.

4. Inspection should not be granted of a mine not described in the petition, under the authority in Code of Civil Procedure, Sec. 1317, for inspection and survey of a mine on petition.

5. The order authorized by Code of Civil Procedure, Sec. 1317, for inspection and survey of a mine for protection of petitioner's interest therein or in another mine should be limited to the necessities of the case, and explicitly state how far it may go.

6. Every word of a statute must be given a meaning, if it is possible to do so.

7. The terms employed in a statute are presumed to be used in their ordinary sense, unless it is apparent from the context or from the subject-matter that they are used in a different or special sense.

8. *Semble:* The costs of obtaining the order under Section 1317, Code of

Civil Procedure, as well as the costs of the survey and inspection, should be paid by the petitioner.

9.  In the order granted under Section 1317, Code of Civil Procedure, the court may provide that all appliances in use to facilitate ingress and egress be made available to the person making the inspection,—the additional expenses being paid by the petitioner.

Writ of *certiorari* on the relation of the Anaconda Copper Mining Company, against the district court of the Second judicial district in and for the county of Silver Bow and William Clancy, judge thereof, to review an order allowing inspection and survey of the underground workings of a mine.   Order annulled.

## Statement of the Case.

On August 8, 1899, F. Augustus Heinze filed in the district court of Silver Bow county the following petition:

"Comes now F. Augustus Heinze, and respectfully alleges and shows to the court: That he is now, and for a long time prior hereto has been, the lessee from the owners of an undivided one-half of the Fairmount lode claim, situated in Summit Valley mining district, Silver Bow county, Montana, and lying adjacent to the Anaconda and St. Lawrence lode claims on the north, and entitled to become the purchaser of said portion of said Fairmount lode claim under and by virtue of an agreement from the owners thereof.   That the Anaconda Copper Mining Company is in the possession of the Anaconda and St. Lawrence lode claims, and of all of the shafts and underground workings therein.   (2) That, as petitioner is informed and believes, certain underground workings have been made by said Anaconda Copper Mining Company into the Fairmount lode claim.   That there are certain veins or ore bodies which have their tops or apices in the said Fairmount lode claim, but so far depart from a perpendicular in their downward course as to pass into the St. Lawrence and Anaconda lode claims beneath the surface thereof, and that as petitioner is informed and believes said Anaconda Copper Mining Company has been and is now engaged in extracting valuable ores from said Fair-

mount lode claim and the veins and ores belonging thereto, and that certain of the underground workings made in and extending from the St. Lawrence and Anaconda lode claims are upon veins and ore bodies which belong to said Fairmount lode claim. (3) That the only means of access to said underground workings is through the shafts in said Anaconda and St. Lawrence lode claims in the possession of said Anaconda Copper Mining Company and the underground workings in said claims and extending therefrom. That it is necessary for your petitioner to have a survey, examination, and inspection of all the shafts and underground workings in said Anaconda and St. Lawrence lode claims, and the underground workings extending therefrom or connected therewith, in order to ascertain, protect, and enforce his rights to the Fairmount lode claim, and to the veins and ore bodies belonging thereto. (4) That on the —— day of August, 1899, your petitioner served upon said Anaconda Copper Mining Company a demand and request in writing, of which 'Exhibit A,' hereto attached, and hereof made a part, is a copy, but that said Anaconda Copper Mining Company has failed and refused for more than three days since the service of said demand and request upon it to grant the same, or to permit your petitioner to have the survey, examination and inspection therein requested. (5) That, as your petitioner is informed and believes, it will be necessary for him to have access to said shafts and underground workings in the said Anaconda and St. Lawrence lode claims by at least six (6) persons for a period of sixty (60) days, in order to make a proper and thorough survey, examination and inspection of the same. Wherefore he prays an order of this court or the judge thereof requiring said Anaconda Copper Mining Company to appear and show cause why an order for survey, examination and inspection of said Anaconda and St. Lawrence lode claims, and of all the shafts and underground workings therein contained, should not be granted to him in accordance with the allegations of this petition."

The notice referred to in the petition as "Exhibit A" con-

tains a demand that the Anaconda Copper Mining Company, designated in the proceeding as defendant, permit the petitioner, with engineers, surveyors, and attorneys, to enter all the underground workings of both the claims mentioned in the petition as in the possession of the defendant, for a period of thirty days, to inspect and survey them.

In default of a compliance with the demand in three days, the defendant was notified that an application would be made to the district court for an order permitting the desired inspection and survey to be made. The demand having been disregarded, the petition was filed, and an order made requiring the defendant to show cause why an order should not be made permitting the inspection and survey. On September 2, 1899, —the time fixed for that purpose,—a hearing was had, and the matter submitted to the court. On December 7, 1901, the court, having had the application under consideration until that time, made the following order:

"This matter coming on to be heard upon the petition herein for an order of survey, examination, and inspection of all of the shafts and underground workings in the Anaconda and St. Lawrence lode claims, or connected therewith, and an order to show cause having heretofore been issued and duly served upon said company, and said respondent appearing by counsel, and said petition having been duly heard and considered upon the return of said order to show cause upon evidence introduced by both parties, the court finds that it is necessary that the petitioner have a survey and inspection. It is therefore ordered that you, the said Anaconda Copper Mining Company, give to F. Augustus Heinze a survey, examination, and inspection of all of the shafts and underground workings contained within the Anaconda and St. Lawrence lode claims, situated in Summit Valley mining district Silver Bow county, Montana, and of all of the underground workings connected therewith, and extending into the Fairmount and Mountain View lode claims. It is ordered that George W. Towner, J. H. Trerise, G. H. Robinson, Brice N. Turner, Alfred Frank, and A. L. Stadler

make such survey, examination, and inspection, commencing on the 11th day of December, and ending on the 22d day of December, 1901, and that you, the said Anaconda Copper Mining Company, at all times during said period, upon the demand of said persons, or either of them, lower and hoist them through said shafts, and permit them to enter said underground workings; that you remove all bulkheads and obstructions which may be necessary to have removed to permit said survey, examination, and inspection. Said survey, examination, and inspection shall be made in such manner as to cause as little inconvenience as possible to the Anaconda Copper Mining Company, and said F. Augustus Heinze shall be responsible to it for all damage done in making said survey, examination, and inspection. A copy of this order shall be sufficient notice to said Anaconda Copper Mining Company, its agents, servants, officers, and employes, of the right of said F. Augustus Heinze and the persons named in this order to make said survey, examination, and inspection, and to enter the premises herein described for such purpose."

On December 9, 1901, the relator made application to the district court for an order modifying the foregoing order, and restricting the extent of the examination, inspection, and survey allowed by it; but the application was denied. Thereafter, on December 17, the relator filed another application in the proceeding, asking the court to vacate and set aside the order entirely, upon the ground that since the date of the hearing upon the original application the petitioner, F. Augustus Heinze, had transferred and conveyed all interest he then had in the Fairmount lode mining claim, and had no further interest therein. This application was also denied. Thereupon, on January 2, 1902, the Anaconda Copper Mining Company filed its petition in this court for a writ of supervisory control, or such other writ as, in the opinion of this court, might be effective to grant the relief from the order so made, alleging that the application to the district court for the order was not in good faith, that it was in excess of jurisdiction, and made for

the purpose of harassing and annoying the relator. Upon the filing of the petition this court issued an order to the district court and William Clancy, the judge thereof, requiring cause to be shown why the order should not be annulled as prayed. Thereafter, on March 15, a writ of *certiorari* was issued from this court directing that the district court and its judge certify up the record of the proceedings had, to the end that the same might be reviewed.

*Mr. W. W. Dixon, Mr. A. J. Shores, Mr. C. F. Kelly,* and *Mr. D. Gay Stivers,* for Relator.

*Messrs. McHatton & Cotter,* for Defendants.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the court.

The order complained of was made under and by virtue of the power which, it is asserted, is vested in the district court, or a judge thereof, by Section 1317 of the Code of Civil Procedure. It was contended by the petitioner in the court below and the same contention is made by the defendants in this court, that this section authorizes the court, or its judge, to require the owner of any mine to permit his neighbor, upon a showing that such owner is or has been engaged in mining and extracting ores which may belong to the latter, or which he claims by virtue of his extralateral rights, to enter into the workings made by such owner in his own premises, and to make such examination, inspection, and survey as may, in the judgment of the court, or its judge, be necessary to enable the petitioner to ascertain, enforce, or protect his rights. The contention is also made that, even if the statute does not, in terms, authorize an order granting permission to inspect and survey adjoining property owned exclusively by another proprietor, yet the court, by virtue of its inherent power as a court of equity, is authorized to grant such an order with reference to any adjoining or neighboring property or premises through

which trespasses may be committed on the property of the petitioner; and that, too, without regard to whether the court has jurisdiction over the property or the parties by virtue of the pendency of a suit in which the parties are seeking an adjustment of their rights. On the other hand, the relator contends that this character of proceeding is statutory; that, independently of a suit involving the rights of the parties to the particular property, the court, or its judge, has no power in the premises other than that conferred in terms by the statute; and that by the express terms of the statute the power of the court or its judge is to be tested by the interest or ownership exhibited by the petitioner in the property of which the inspection is sought or through which entry for that purpose is necessary. In other words, it is said that, in order to bring himself within the purview of the statute, the petitioner must show some sort of proprietary interest in the premises which are in the possession of his adversary, and into or through which he desires to enter for inspection.

1. What power is conferred by the statute? The section in question reads as follows: "Whenever any person shall have any right to or interest in any lead, lode, or mining claim which is in the possession of another person, and it shall be necessary for the ascertainment, enforcement or protection of such right or interest that an inspection, examination or survey of such lead, mine, lode or mining claim should be had or made; or whenever any inspection, examination or survey of any such lode or mining claim shall be necessary to protect, ascertain or enforce the right or interest of any person in another mine, lode or mining claim, and the person in possession of the same shall refuse, for a period of three days after demand therefor in writing, to allow such inspection, examination or survey to be had or made, the party so desiring the same may present to the district court, or a judge therof, of the county wherein the mine, lead, lode or mining claim is situated, a petition, under oath, setting out his interest in the premises, describing the same, that the premises are in the possession of a party, naming him,

the reason why such examination, inspection or survey is necessary, the demand made on the person in possession so to permit such examination, inspection or survey, and his refusal so to do. The court or judge shall thereupon appoint a time and place for hearing such petition, and shall order notice thereof to be served upon the adverse party, which notice shall be served at least one day before the day of hearing. On the hearing either party may read affidavits or produce oral testimony, and if the court or judge is satisfied that the facts stated in the petition are true, he shall make an order for an inspection, examination or survey of the lode or mining claim in question in such manner, at such time, and by such persons as are mentioned in the order. Such person shall thereupon have free access to such mine, lead, lode or mining claim for the purpose of making such inspection, examination or survey, and any interference with such person while acting under such order shall be contempt of court. If the order of the court is made while an action is pending between the parties to the order, the costs of obtaining the order shall abide the result of the action, but all costs of making such examination or survey shall be paid by the petitioner." (Section 1317, Code of Civil Procedure.) So far as we are aware, the provisions embodied in this section are peculiar to our own jurisdiction. We find that the section was enacted by the territorial legislature of 1881 (Acts 12th Sess. p. 10) as an amendment to the Code of Civil Procedure of 1879, and that it has been incorporated in all the revisions of this Code since that time. The constitutionality of it was called in question in *St. Louis Min. & Mill. Co. v. Montana Co.*, 9 Mont. 288, 23 Pac. 510, and in the same case on error to the supreme court of the United States, 152 U. S. 160 (14 Sup. Ct. 506, 38 L. Ed. 398), but the extent of the power of the court under it has never been considered or determined. It is asserted by counsel for the defendants that the relative situation of the parties and the ownership of the property involved in that case were the same as in the present case, and that the implied construction then given the section by this court is the

same as that which they now contend for, and is of binding authority. The only questions presented in the briefs of counsel in that case, and the only ones considered and determined, are found stated in the opinion of this court at page 300 (9 Mont. page 512, 23 Pac.). They are restated in 152 U. S. at page 165 (14 Sup. Ct. 507, 38 L. Ed. 398), and were the only questions considered by the supreme court of the United States. These have to do with certain features of the legislation, which, it was alleged, rendered it obnoxious to the provisions of the state and federal constitutions prohibiting the deprivation of property without due process of law. It was held to be constitutional, as not violative of these constitutional prohibitions; but the relative situation and ownership of the property to which its terms apply were not considered, counsel having conceded (9 Mont. 299, 23 Pac. 512) that the order was properly made if the section was not open to the constitutional objection urged against it. Where a suit is pending involving the rights of the parties to the particular property, the court proceeds under Sections 1314 and 1315 of the Code of Civil Procedure, and under them the inspection may be made notwithstanding it involves a temporary occupancy of other property than that in controversy. These sections are but declaratory of the inherent power of courts of equity (perhaps, also, of courts of law), and rest upon the principle that the parties should be enabled to put the court in possession of all the facts touching the controversy, to the end that their rights may be properly adjudicated. (*State ex rel. Anaconda Copper Mining Co. v. District Court of Second Judicial Dist. of Silver Bow Co.,* 25 Mont. 504; 65 Pac. 1020; *Montana Co. v. St. Louis Min. & Mill. Co.,* 152 U. S. 160, 14 Sup. Ct. 506, 38 L. Ed. 398.) The power of the court under these sections is limited only by the necessities of the pending action.

As to Section 1317, we are aware of no case in which the extent of its application has been considered, and the question of its proper construction is now presented for the first time. We must, therefore, refer to the statute itself, and determine

from the terms employed in it what circumstances are necessary to put the power of the court in motion.

Passing, for the present, the character of the interest necessary to be exhibited by the petitioner, and assuming that an exhibition of any interest, though a disputed one, is sufficient, it seems clear that the inspection must be limited to premises in which the petitioner has some sort of proprietary interest. The purpose of the inspection is twofold, namely:  (1) To ascertain whether the right or interest of the petitioner in the property in possession of the adverse party is being injured; and (2) to ascertain by inspection of such premises whether the right or interest of the petitioner in other premises is being injured.  The first clause of the statute applies to "any lead, lode or mining claim" in the possession of another, in which the petitioner has an interest.  It has reference to a property right in the very premises sought to be inspected, and proceeds upon the just theory that an obligation rests upon the party in possession to permit the inspection upon a proper demand for permission to make it.  The purpose served is to ascertain the rights of the party not in possession, and to furnish him with the facts necessary to enable him to protect his interests, if they need protection.

The second designation of property with reference to which the order may be made is expressed in the words: "Or whenever any inspection   *   *   *   of *any such lode or mining claim* shall be necessary to protect, ascertain or enforce the right or interest of any person in another mine, lode or mining claim, and the person in possession of the same shall refuse," etc.  The words "any such lode or mining claim" clearly relate to the same character of lode or mining claim as that mentioned in the first clause; that is, one in which the petitioner has an interest, and which is in the possession of another.  The word "such" in its ordinary sense, in the connection in which it is here used, signifies "the same as previously mentioned or specified; not other or different."  (Century Dictionary.)  In this sense it is used with reference to some antecedent word or

phrase, and signifies that the word or phrase of which it is made an attributive—as, in this instance, "lode or mining claim"—is to be understood as indicating something of the same class or in the same situation as the one already described, and to which it refers. In this sense it must be used here, else it must be considered as without any signification, and the phrase *"any such lode or mining claim"* should otherwise be read *"any lode or mining claim."* This disposition of the word would give the phrase the meaning contended for by the defendants, but would do violence to the elementaray rule of construction that every word of a statute must be given a meaning, if it is possible to do so. Another rule equally applicable in this connection is that the terms employed in a statute are presumed to be used in their ordinary sense, unless it is apparent from the context or from the subject-matter that they are used in a different or special sense. That the word *"such"* is not used in any special sense here is manifest from the context, in which it is several times used with reference to other previously described objects, but always in the same sense. The conclusion that the meaning we have given it is the proper one is further strengthened by a consideration of the matters which must be set forth in the petition. The petitioner must state his interest in the premises which he desires to inspect. He must describe the same. He must state that the premises are in the possession of a party, naming him. He must state the reason why the inspection is necessary, and that demand has been made upon the party in possession. He must set forth an interest in the *premises* to be inspected; whether the purpose is to ascertain, protect or enforce his interest in the particular property, or an interest owned by him in an adjoining property. The use of the word *"premises"* indicates that the interest owned or claimed must be such an interest as is the subject of a conveyance,— such as an interest by tenancy in common, leasehold, reversion, or other interest of like character. The asserted right to enter within the vertical planes of the boundaries of the property from an adjoining claim—as in this case from the Fairmount

claim into the Anaconda and St. Lawrence—is not such an interest as would meet the requirement, for such an interest would not pass by virtue of a conveyance of either of the latter claims.   These extralateral rights, if they exist at all, constitute an interest in the Fairmount claim.   They can only be described as such, having been obtained by a grant of that claim by the patent, and are conveyable only by virtue of the estate owned in that claim.

It is to be observed, further, that the petition need not charge the adverse party with a wrongful possession.   The only wrong to be charged is the refusal to permit the inspection.   This feature also very strongly implies that the whole basis of the proceeding is some interest or ownership in the property itself which is a subject of conveyance, and supports the contention of the relator that the legislature manifestly did not intend that one person should be allowed by a summary proceeding to invade the property of another, and make inspection of it, merely because such an inspection might benefit the applicant. In any event, if it was intended by the act to accord to an owner of a mining claim or lode the right, upon demand, to enter upon and inspect property in the possession of his neighbor, and belonging exclusively to him, with a view to determine whether the latter is committing a trespass, the legislature failed to use terms suitable to express such intention.   "Every citizen holds his property subject to the power of the state to prescribe reasonable regulations for the protection of the property and rights of others."   *(State ex rel. Anaconda Copper Mining Co. v. District Court of Second Judicial Dist.*, 25 Mont. 504, 65 Pac. 1020.)   But, beyond sustaining the reasonable burdens thus imposed upon him, he is not required to submit to any invasion of his property or possessions; and no court or judge has the power to interfere with him in the enjoyment of his property, except so far as such interference may be warranted by the inherent power of the court or by express legislative sanction, and then only in the interest of justice.

It does not appear that the petitioner has any interest in the

Anaconda and St. Lawrence claims. The basis of his asserted right to enter the relator's shafts, drifts. and other workings in these claims is the supposed existence of extralateral rights upon a vein the apex of which is within the boundaries of the Fairmount claim. Under the construction we have given the statute,—and, in our opinion, it is the only construction of which it is fairly susceptible,—the exhibition of this right is not sufficient to give the court, or its judge, jurisdiction to make the order.

Counsel for defendant suggest that, unless this be declared a sufficient showing of interest to warrant the order, one owner may trespass with impunity upon another, while the latter is left without the means of discovering the fact and extent of the wrong done him. So far as concerns the right of inspection, when no suit is pending in cases in which the property is in the situation presented in this case, the suggestion seems to be pertinent; but the necessity for a remedy, if there be such a necessity, is a matter which should be submitted to the consideration of the legislature. It is an exclusive function of that department of the government to furnish the extraordinary summary remedy which the circumstances of this and like cases demand. The petitioner is not remediless, however. If he has information, as he alleges, that trespasses are being committed upon his property, the way is open to him to invoke the preventive power of the court in an ordinary action, whereupon its authority to assist him to ascertain the facts necessary to full relief will be limited only by the necessities of the case.

2.  We do not understand upon what theory the defendants assert that a court of equity has inherent power, independently of a pending action, in which it has jurisdiction of the parties and the property in controversy, to make the order under consideration. There is nothing in the petition which invokes any of the ordinary powers of a court of equity; nor has our attention been called to any case wherein any court, in the absence of statutory authority, when no suit was pending between the parties, has assumed, in a summary way, to adjudicate per-

sonal or property rights. There are many cases reported in which inspection orders have been made, but in none of them do we find the courts assuming the power to make them except in aid of the rights of the parties, which were being adjudicated in the ordinary way. Even in such cases the power is used with caution, and only when it is apparent that its exercise is necessary to serve the ends of justice. Among such cases are the following, being all the American and English cases which we have been able to examine: *Earl of Lonsdale* v. *Curwen,* 3 Bligh, 168; *Walker* v. *Fletcher, Id.* 172; *United Co.* v. *Kynaston, Id.* 153; *Blakesley* v. *Whieldon,* 1 Hare, 176; *Lewis* v. *Marsh,* 8 Hare, 97; *Bennitt* v. *Whitehouse,* 28 Beav. 119; *Bennett* v. *Griffiths,* 30 Law J. Q. B. 98; *Whaley* v. *Brancker,* 10 Law T. (N. S.) 155; *Thomas Iron Co.* v. *Allentown Min. Co.,* 28 N. J. Eq. 77; *Thornburg* v. *Savage Min. Co.,* 1 Pac. Law Mag. 267; *Stockbridge Iron Co.* v. *Cone Iron Works,* 102 Mass. 80; *Duggan* v. *Davey,* 4 Dak. 110, 26 N. W. 887. Most of these cases are also reported in volumes 7 (pages 667-696) and 8 (pages 1-41) of Morrison's Mining Reports. There are doubtless other cases in point, but the foregoing are sufficient to sustain the general proposition stated that courts do not assume to adjudicate the rights of parties in a summary proceeding without express statutory authority; and in no case do they authorize entry upon the property of parties over whom they have acquired jurisdiction, except when the necessity of the case demands it in the interest of justice. The case of *Thomas Iron Co.* v. *Allentown Min. Co.,* supra, would seem, upon a casual reading, to support the contention of defendants, but a careful examination of it shows it to have been a proceeding in equity for injunction to restrain the defendants from preventing the complainant from entering a shaft sunk upon its own property and the workings connected therewith to discover the extent of a trespass committed by defendants, and also for an accounting of ores extracted. Another purpose of the action was to prevent the defendants from destroying the supports left in the mine, thus allowing the surface to cave in

and fill the excavations, and also by this means to flood them with surface water, thus destroying the evidence of the trespass. The inspection was allowed under the injunction. Thus it appears that the power of the court was exercised by virtue of its ordinary equity jurisdiction by injunction, upon allegation of facts properly invoking it. It also appears that the question was whether the court should permit the complainant to enter through its own property.

3.    Speaking generally, and in order to dispose of suggestions made during the argument of counsel, the last provision of the statute seems to require the costs of the survey and inspection, as well as of obtaining the order, to be paid by the petitioner. The only burden cast upon the adverse party would seem to be to grant free access to the property. The authority to make the order in a particular case would necessarily carry with it also authority to make the order effective, so that all the appliances in use to facilitate ingress and egress should be made available to the persons making the inspection, the additional expense being paid by the petitioner. The order should provide for contingencies of this character. At the same time the court should not, as in this instance, grant an inspection of, or permission to enter upon, property not mentioned in the petition. The Mountain View claim is mentioned in the order. It does not appear, however, who is the owner of it. It is not described in the petition. The court would, under no circumstances, have authority to invade the rights of persons not parties to the suit or proceeding. The order should not have included this claim.

The order is also subject to criticism in that it does not limit in any way the discretion of petitioner's agents as to the extent of the inspection. They are given unlimited discretion to inspect any workings in the Anaconda and St. Lawrence claims, or any connected with them in any direction. The order should be limited to the necessities of the case, and explicitly direct the extent to which the inspection and survey should go.

Much was said in argument by counsel as to whether the

right or interest claimed by the petitioner in a proceeding un-
der this statute must be an undisputed one. We would not
undertake to go further at this time than to say that under the
first clause of the statute the petitioner must exhibit at least a
substantial *prima facie* interest, which it is necessary for him
to protect or enforce. Under the second clause the necessity
to show an interest both in the premises to be inspected and in
the property to be protected would be measured by the same
rule.

The order of the district court was wholly in excess of juris-
diction, and is therefore annulled.

*Annulled.*

---

## ON MOTION FOR REHEARING.

(Nos. 1,759 and 1,775.)

(Submitted May 26, 1902.   Decided June 2, 1902.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion
of the court.

Counsel for defendants have submitted motions for a rehear-
ing of these causes, with elaborate briefs in support of them.
They contend that the court rested its decision of the question
involved upon a view of the statute which was not discussed
either in the oral argument or briefs submitted at the hearing.
They say that it did not occur to them that any special sig-
nificance was to be given to the phrase "any such lode or min-
ing claim," and that they did not deem it necessary in their
argument and briefs to discuss it.

While it is true that the briefs upon which the argument
was made at the hearing contained no direct reference to the
meaning of this expression, yet, owing to the importance of

the question involved, and following suggestions made by questions put by different members of the court during the course of the argument, counsel on both sides asked and obtained leave to file supplemental briefs devoted to a discussion of the proper construction to be given to the statute and the extent of the powers conferred by it. In these briefs both sides dwell at some length upon the meaning of the phrase "any such lode or mining claim" and its significance, in view of the matters which are required to be set forth in the petition for an inspection order. We have re-examined carefully all these briefs, together with the briefs submitted on these motions. These latter contain no suggestion which was not given full consideration in the preparation of the original opinion. We are of the opinion, after such re-examination of the question involved, that a rehearing would not result in a different conclusion. The motions are therefore denied.

*Denied.*