[No. 1951]

## NATIONAL MINES COMPANY (A CORPORATION), PETITIONER, *v.* SIXTH JUDICIAL DISTRICT COURT, STATE OF NEVADA, IN AND FOR THE COUNTY OF HUMBOLDT, THE HON. EDWARD A. DUCKER, JUDGE THEREOF, RESPONDENT.

1. MINES AND MINERALS—ORDERS FOR SURVEYS OF UNDERGROUND WORKINGS OF MINES WITHOUT ACTION.

    A statute, empowering a court of equity, on a proper showing, to order, in the absence of a pending suit, a survey of the boundaries and underground workings of adjacent mines, is not unconstitutional.

2. MINES AND MINERALS—DIRECTING SURVEYS OF THE BOUNDARIES AND UNDERGROUND WORKINGS OF MINES.

    Equity has the inherent power to order, in a pending case, a survey of the boundaries and underground workings of mines constituting the subject-matter of the suit.

3. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

    The court, in construing an ambiguous statute, may consider the law as it existed prior to the statute.

4. MINES AND MINERALS—SURVEY OF BOUNDARIES AND UNDERGROUND WORKINGS OF MINES—POWER OF COURTS—STATUTES.

    The act of December 17, 1862 (Stats. 1862, c. 37), authorizing any owner of any mine to sue for damages for improper mining by one in possession under a lease and for trespass to his mine, and providing for an application for an order for a survey of mines, and declaring that the costs of the order and survey shall be paid by the persons making the application unless they shall subsequently maintain an action and recover damages by reason of a trespass threatened prior to such survey, does not permit a survey of the boundaries and underground workings of adjacent mines unless there is a pending suit involving such mines.

5. STATUTES — CONSTRUCTION — LEGISLATIVE INTENT — CHANGE IN EXISTING PROCEDURE.

    Where a statute is equally susceptible of two constructions, the court will presume that the legislature did not intend a radical change in existing procedure, and will construe the statute in harmony therewith.

6. STATUTES—CONSTRUCTION—MEANING OF WORDS—"MAINTAIN."

    The word "maintain" in a statute in reference to actions comprehends the institution as well as the support of the action, though it may be used to express a meaning corresponding to its more restricted definition.

7. STATUTES—CONSTRUCTION—MEANING OF WORDS.
     Where the same word is used in different parts of a statute,
     it will be presumed to be used in the same sense throughout,
     and, where its meaning in one instance is clear, such meaning
     will be attached to it elsewhere, unless it clearly appears that
     it was the intention of the legislature to use it in different
     senses.

TALBOT, J., dissenting.

ORIGINAL PROCEEDING.    Application for *certiorari* by
the National Mines Company against the Sixth Judicial
District Court for the County of Humboldt and the judge
thereof thereof, to review an order of the judge.    **Order
annulled.**

### STATEMENT OF FACTS

This is an original proceeding in *certiorari* to review
an order of the Sixth Judicial District Court of the State
of Nevada, in and for the County of Humboldt, the Hon-
orable Edward A. Ducker, district judge thereof, presid-
ing, directing a survey of the boundaries and underground
workings of the Charleston and West Virginia lode min-
ing claims, the property of the petitioner herein.

The facts, briefly stated, that raise the questions of
law presented in this proceeding, are as follows: One
H. E. Orr on the 19th day of December, 1910, filed in the
Sixth Judicial District Court of the State of Nevada, in
and for Humboldt County, his affidavit and application,
in which he alleged, among other things, that he holds a
contract for the working of the Charleston No. 1, West
Virginia No. 1, and West Virginia Fraction lode mining
claims in the National mining district, Humboldt County,
Nevada, and describing the same, and that the petitioner
herein owns the Charleston and West Virginia lode mining
claims, in said mining district, and describing the same, and
that the petitioner herein is in possession thereof, that the
said claims of the applicant, H. E. Orr, and the said claims
of the petitioner herein, are in the main contiguous; that
the said H. E. Orr has reason to believe, and does believe,
that the petitioner herein is working beyond its lines on
the strike of the Charleston vein, and into the claims of
the said applicant, mentioned above; that there was not

at the time said application and affidavit were filed, or at any time hitherto, a suit pending in the said district or any court between the said H. E. Orr and the petitioner herein; that on the said 19th day of December, 1910, the Honorable Edward A. Ducker, judge of the said court, entered an order on said affidavit and application, requiring the petitioner herein to appear in said court on the 29th day of December, 1910, and show cause why the order for survey prayed for in the said affidavit and application should not be made; that on the said 29th day of December, 1910, the petitioner herein appeared in said court, and objected to said court hearing said matter or making said order of survey, for the reason and on the ground that the said court had no jurisdiction to hear the same or make said order in the absence of a pending suit between the said parties in the said court; that such objection was by said court overruled, and that certain affidavits were then filed therein by the petitioner herein, and said court proceeded to hear the said application of the said H. E. Orr; that on the 21st day of January, 1911, the said court, through its said judge, made an order on said affidavit and application, as prayed for therein, among other things, appointing four surveyors to survey the surface boundaries of the said property of the petitioner herein, and all the underground workings thereof. The order for the survey in question is based upon the provisions of section 3 of an act of the legislature of the Territory of Nevada, entitled "An act for the protection of mines and mining claims," approved December 17, 1862, the material portions of which act read as follows:

"SECTION 1.   Any person or persons, company or corporation, being the owner or owners of, or in the possession under any lease or contract for the working of any mine or mines within the State of Nevada, shall have the right to institute and maintain an action, as provided by law, for the recovery of any damages that may accrue by reason of the manner in which any mine or mines have been or are being worked and managed by any person or persons, company or corporation, who may be the

owner or owners, or in possession of and working such mine or mines under a lease or contract, and to prevent the continuance of working and managing such mine or mines in such manner as to hinder, injure, or by reason of tunnels, shafts, drifts or excavations, the mode of using, or the character and size of the timbers used, or in any wise endangering the safety of any mine or mines adjacent or adjoining thereto. And any such owner of, or in the possession of any mine or mining claim, who shall enter upon or into, in any manner, any mine or mining claim, the property of another, and mine, extract, excavate or carry away any valuable mineral therefrom, shall be liable to the owner or owners of any' such mine or mines trespassed upon in twice the amount of the gross value of all such mineral mined, extracted, excavated or carried away, to be ascertained by an average assay of the excavated material or the ledge from which it is taken." (As amended, Stats. 1891, p. 37.)

"SEC. 3. Any person or persons named in the first two sections of this act, shall have the right to apply for and obtain from any district court, or the judge thereof, within this territory, an order of survey in the following manner: An application shall be made by filing the affidavit of the person making the application, which affidavit shall state, as near as can be described, the location of the mine or mines of the parties complained of, and as far as known, the names of such parties; also, the location of the mine or mines of the parties making such application, and that he has reason to believe, and does believe, that the said parties complained of, their agent, or employees, are or have been trespassing upon the mine or mines of the party complaining, or are working their mine in such manner as to damage or endanger the property of the affiant. Upon the filing of the affidavit as aforesaid, the court or judge shall cause a notice to be given to the party complained of, or the agent thereof, which notice shall state the time, place, and before whom the application will be heard, and shall cite the party to appear in not less than five or more than ten days from the date thereof, to show

cause why an order of survey should not be granted; and upon good cause shown, the court or judge shall grant such order, directed to some competent surveyor or surveyors, or to some competent mechanics, or miners, or both, as the case may be, who shall proceed to make the necessary examination as directed by the court, and report the result and conclusions to the court, which report shall be filed with the clerk of said court.   The costs of the order and survey shall be paid by the persons making the application, unless such parties shall subsequently maintain an action and recover damages, as provided for in the first two sections of this act, by reason of a trespass or damage done or threatened prior to such survey or examination having been made, and in that case, such costs shall be taxed against the defendant as other costs in the suit.   The parties obtaining such survey shall be liable for any unnecessary injury done to the property in the making of such survey."   (Comp. Laws, 250, 252.)

*L. G. Campbell*, for Petitioner.

*Curler & Martinson* and *R. C. Thayer*, for Respondents.

By the Court, NORCROSS, J.:

Petitioner herein contends that the respondent court was without jurisdiction to make the order of survey in question, for the reason that section 3 (Comp. Laws, 252) *supra*, does not authorize such order in advance of a pending suit; that, if said section may be so construed as to permit such order in advance of a pending suit, then the same would be in violation of the constitution and void; that the said applicant, H. E. Orr, was not within the class of persons mentioned in section 1 of said act (Comp. Laws, 250), *supra*, and hence not entitled to an order in any event under its provisions.

There have been but few cases considered by the courts involving the question of the power of a court to make an order for a survey of a mine prior to the institution

of suit.   It is conceded that, in the absence of statutory authority, such an order may not be made.

It was held by the Supreme Court of Montana in *St. Louis M. & M. Co.* v. *Montana Co.*, 9 Mont. 288, 23 Pac. 510, that under the provisions of section 376, Code Civ. Proc., the then practice act of that state, an order could be made without a suit pending for a survey of the underground workings of a mine in the possession of another in which the party making the application has a right or interest.   Upon appeal to the Supreme Court of the United States, involving the validity of the judgment, as tested by the fourteenth amendment of the federal constitution, the judgment of the Montana court was affirmed.   (152 U. S. 160, 14 Sup. Ct. 506, 38 L. Ed. 398.)

In this later case the court, by Brewer, J., said: "The frequency with which these orders of inspection have of late years been made, and the fact that the right to make them has never been denied by the courts, is suggestive that there is no inherent vice in them.   And, if the courts of equity by virtue of their general powers may rightfully order such an inspection in a case pending before them, surely it is within the power of a state by statute to provide the manner and conditions of such an inspection in advance of suit."

Section 376 of the earlier practice act of Montana was incorporated in the practice act of that state subsequently adopted, and is now section 1317 of the present practice act (section 6876, Revised Codes of Montana).   It was held in *State ex rel. Anaconda C. M. Co.* v. *District Court,* 26 Mont. 396, 68 Pac. 570, 69 Pac. 103, that this section only applied in cases in which the parties seeking a survey had an interest in the property sought to be surveyed, and that in all other cases the power to order a survey was governed by sections 1314 and 1315, Code Civ. Proc. 1895 (Rev. Codes, sections 6874, 6875), by the provisions of which a survey could not be ordered excepting in a pending action.   This decision has been affirmed in several subsequent decisions of the Montana court.

In the case of *People ex rel. Calumet G. M. & M. Co.* v. *De France, Judge,* 29 Colo. 309, 68 Pac. 267, the Supreme Court of Colorado annulled an order of the trial court directing a survey of certain mining property in advance of a suit, and, in construing the provisions of section 364 of the Colorado code of procedure, held that such section did not contemplate the making of such an order excepting in the case of a pending suit.

There is but one other case to which our attention has been called or which we have been able to find involving the question of an order of survey made in the absence of a pending suit, to wit, the case of *In re Carr,* 52 Kan. 688, 35 Pac. 818.   The Carr case was in *habeas corpus* and the petitioner who had been committed for contempt for refusing admittance to the surveyor was discharged, but not upon the ground that the lower court was without jurisdiction to make the order in question.   The Kansas statute applied only to coal mines and empowered the court or judge, upon the affidavit of a person in which it shall be made to appear that such person shall have good reason to believe that another person or persons, corporation or corporations, are without authority encroaching upon the land of the person aggrieved to make an order directing the county surveyor to survey the mine or mines of the person or persons, corporation or corporations, accused for the purpose of ascertaining the truth thereof. It is further provided in the act that:

"Sec. 3.   Whenever it shall be made to appear by petition verified by the oath of the plaintiff, his agent or attorney, and by the survey of the county surveyor, that any person or persons, corporation or corporations, is or are, without authority, mining or taking coal from the land of the plaintiff, whether held by lease or otherwise, it shall be the duty of the proper district court in term time, or the judge thereof in vacation, to grant a temporary injunction restraining such person or persons, corporation or corporations, from mining or taking coal from such land till the further order of the court or judge.

"SEC. 4. The proceedings in such case shall be in all respects similar to the course of procedure in actions for injunction." (Laws 1877, c. 127.)

The Kansas statute was attacked as being unconstitutional, but whether the attack was made upon the ground that the legislature had no power to provide for such a survey in the absence of a pending suit does not appear. The constitutional question is disposed of by the majority opinion of the court in the following terse sentence: "We perceive no good reason for holding the act unconstitutional so far as it applies to property in Kansas." Johnson, J., concurred in the view that a survey could not be ordered or compelled in territory outside of the state (the coal mine being upon the boundary line between the States of Kansas and Missouri), but stated: "I do not desire to express any opinion upon the other objections made to the validity of chapter 127 of the laws of 1877." In the opinion of the court by Allen, J., appears the following: "The remedy afforded by the act is an injunction. The survey is merely preliminary and for the purpose of ascertaining whether a cause of action exists." The Kansas statute has never been involved in any subsequent case thus far reported.

We think it may be conceded at least for the purposes of this case, that there is no inherent constitutional impediment against the legislature empowering the court or judge, upon the proper showing, to make an order for the survey of mining property in the absence of a pending suit, and that the only question we need consider in the present case is whether the statute of this state in question empowers a district court or judge to make such an order.

It is now well settled that courts of equity have inherent power to make orders of this character in cases pending before them. Most, if not all, of the mining states, however, have statutes regulating the procedure to obtain these orders. These statutes generally provide for such orders to be made only in pending actions, and the only exceptions thereto may be found in the Kansas and Mon-

tana statutes heretofore referred to, unless our own statute should be construed also to be an exception to the general rule.

In enacting the statute of December 17, 1862, *supra,* the territorial legislature did not use language that was the most apt to express clearly its purpose and intent. This was doubtless the first statute passed in this country governing an order of survey of mining properties to be obtained by a party who had no interest therein, but who was affected by the operations thereof. Section 1 of the act, as originally passed, did not contain the last sentence quoted, *supra,* which was embodied therein by the amendment of 1891. Counsel upon both sides in this proceeding have presented elaborate arguments upon the construction of section 3 of the act; counsel for petitioner in this proceeding contending that the section should be construed only to permit an order for survey after the action is instituted, and counsel for the respondent contending for the contrary construction. One need but read the arguments advanced by respective counsel to appreciate that the section is ambiguous in many particulars.

In construing any statute the language of which is not clear, it is well first to consider the law as it existed prior to the enactment. At the time this statute was enacted, no court of equity in this country had ever exercised its inherent power to order a survey of the underground workings of a mine, and, indeed, it is doubtful if any other character of survey had been so ordered. The first instance in this country in which a court of equity had ordered such a survey was in the Circuit Court of the United States for the District of Nevada in the case of *Thornburgh* v. *Savage Mining Company,* Fed. Cas. No. 13,986, 7 Morr. Min. Rep. 667, decided in 1867. The next case reported is that of *Stockbridge Iron Co.* v. *Cone Iron Works,* 102 Mass. 80, decided in 1869.

From the beginning of about the nineteenth century courts of chancery in England exercised the power in pending suits to order surveys of the surface and under-

ground workings of mining properties. (3 Wigmore on Evidence, sec. 1862, p. 2456.)

Sections 258 and 259 of the practice act of the Territory of Nevada, which substantially corresponds to sections 260 and 261 of our present practice act (Comp. Laws, 3355, 3356), provided as follows:

"SEC. 258. The court in which an action is pending for recovery of real property, or a judge thereof, may, on motion, upon notice to either party, for good cause shown, grant an order allowing to such party the right to enter the property and make a survey and measurements thereof, for the purpose of the action.

"SEC. 259. The order shall describe the property, and a copy thereof shall be served on the owner or occupant, and thereupon such party may enter upon the property with necessary surveyors and assistants and make such survey and measurements; but if any unnecessary injury be done to the property, he shall be liable therefor."

From the foregoing it appears that at the time the statute of 1862 was enacted no court possessed power to make an order of survey excepting in a pending suit. Courts of equity in this country had not up to that time assumed the exercise of their inherent powers in this regard, and they were then undefined. The statute of the territory had provided for an order of survey in pending actions for the survey of real property, but whether this statute was or is broad enough to permit a survey of the underground workings of a mine in an action for damages in trespass committed below the surface of the earth may seriously be questioned.

We think it appears from a reading of section 1 of the act in question that the legislature intended either to create a new cause of action where none existed before or to make clear and unquestionable what may have been deemed a doubtful right, particularly that of enjoining mine owners or operators from so conducting their operations as to endanger the safety of adjoining properties. The right to recover damages for a trespass was so well known and understood that it needed no statutory pro-

vision to create or clearly define such right of action, and this may account for the specific reference to trespass in the third section and not in the first as originally enacted. There was, however, just as much reason for a survey in the case of an underground trespass as in the other causes of action mentioned in section one.   The manifestly crude manner in which the act was prepared and the ambiguous language used has left it open to argument as to whether the legislature intended that an order of survey in any of the cases mentioned in the the statute could be made except in a pending suit.

Were the act equally susceptible of two constructions, we would be disposed to hold that the legislature would not be presumed to intend a radical change in existing procedure, and would construe the act in harmony therewith.   In other words, we would not construe a statute so as to permit such an order for survey without a suit pending in the absence of language clearly manifesting such an intent upon the part of the legislature.   We think section 3 does not express such a clear intent, but, upon the contrary, there is language used which, under a well-recognized rule of statutory construction, manifests a contrary intent.   Both parties to this proceeding have laid stress upon the following sentence of section 3 as supporting their divergent views as to the legislative intent as deduced from the language of the statute: "The costs of the order and survey shall be paid by the persons making the application, unless such parties shall subsequently maintain an action and recover damages as provided for in the first two sections of this act," etc. We think the contention of counsel for petitioner herein supported by the better reasoning.   If the word "maintain" as used in section 3 is given the same meaning as it has in section 1, then it means to support and carry on an action that has theretofore been instituted.

The word "maintain," as used frequently in statutes in reference to actions, comprehends the institution as well as the support of the action, and the statutes of this state contain many instances where it is used in this

broader sense. It is used in other instances to express a meaning corresponding to its more restricted and more proper definition, as in the cases of *Carson-Rand* v. *Stern,* 129 Mo. 381, 31 S. W. 772, 32 L. R. A. 420, and *Cal. Savings Co.* v. *Harris,* 111 Cal. 133, 43 Pac. 525, cited in petitioner's brief, where it was construed not to comprehend the institution of an action, but merely the support thereof. In section 1 the two words are used together, "institute and maintain"; and hence both are used in their restricted sense. If both words had been used in section 3, there would have been no room for construction. The power to make the order prior to the institution of the suit would have been manifest. The word "maintain" only was used, and it will be presumed to be used in the same sense and with the same meaning in which it was used in section 1; there being nothing in the statute to clearly indicate that it was used in any different sense.

"Where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and, where its meaning in one instance is clear, this meaning will be attached to it elsewhere, unless it clearly appears from the whole statute that it was the intention of the legislature to use it in different senses." (36 Cyc. 1132, and authorities cited in notes.) Much stress has been laid on the fact that section 3, *supra,* does not use the word "plaintiff" as the one who may apply for the survey or upon whose behalf such application may be made, but uses instead the words "any person or persons named in the first two sections of this act, shall have the right to apply," etc., also, that the affidavit is required to set forth facts that would be disclosed by the complaint were an action pending, as indicating that the legislature did not contemplate a pending suit at the time of the application and order for the survey.

Conceding the force of this argument, we do not deem it sufficient to outweigh the reasons given in support of the contrary construction. The only person or persons

named in section 2 of the act in question is the judgment debtor or debtors, and it is difficult to conceive why the legislature should have referred to section 2 at all, as that section only provides that the judgment recovered in the action shall be a lien on the property of the judgment debtors.   A judgment debtor must, before he can become such, be a party to an action.   If a reference to section 2 is any aid to construing section 3, we are unable to see wherein it tends to support the position of counsel for respondent.   Section 1 specifies all those who have a right of action under the provisions of that section, and any within the class mentioned also have the right to apply for an order of survey, but this reference does not preclude the idea that such persons shall be parties to a pending suit.   A complaint may not of necessity contain all the matters required to be set forth in the affidavit for the order of survey, and it is not required to be sworn to, and this may have been the reason why the legislature specified with particularity what the affidavit should contain.   In any event, it is not inconsistent with the construction of the section so as to require a pending suit.

The Colorado statute, like ours, does not use the terms "plaintiff" and "defendant" to indicate the parties to the proceeding to obtain the order, but the Colorado court construed their statute to apply only in case of a pending suit.   While possibly not a matter to be considered of any considerable weight, it is worthy of note that the text-writers on mining law have placed the Nevada statute in question in the category of those requiring an action pending before an order of survey may be made.   (Lindley on Mines, 873; Snider on Mines, 1637; Morrison's Mining Rights, 14th ed., p. 432; Costigan on Mining Law, p. 519.)   Mr. Snider in his work says: "It will be readily observed that all these statutes agree upon one proposition, namely, that an action must be pending at the time the application for a survey is made."

Having reached the conclusion that the statute in question does not authorize an order of survey excepting in a

pending suit, it follows that any such order would be in excess of jurisdiction and void.

The order under review herein is annulled.

SWEENEY, C. J.: I concur.

TALBOT, J., dissenting:

I am unable to concur in all the conclusions reached by my learned associates. As it has been held by the Supreme Courts of Kansas, Montana, and of the United States that the legislature may constitutionally provide for surveys without the institution of suit, and as all of the members of this court concede that this is a correct construction of the law, and no court has decided to the contrary, the only question for determination is whether the legislature has authorized the ordering of surveys before an action is commenced.

A careful examination of the statute makes it clear that the legislature has empowered the district courts and judges to order the making of surveys without suit, and has designated the persons upon whose application they may be ordered. The statute neither directly nor by implication provides that application for the survey may be made only by a party who has previously commenced an action, or that any suit must be pending before the applicant will be entitled to an order for the survey. Consequently the decision of the majority of the court legislates into the act a condition not placed there by the legislature. This is quite apparent from the first few lines of section 3 of the statute, which provide that: "Any person or persons named in the first two sections of this act, shall have the right to apply for and obtain from any district court, or the judge thereof, within this territory, an order of survey in the following manner: An application shall be made by filing an affidavit of the person making the application, which affidavit shall state, as near as can be described, the location of the mine or mines of the parties complained of, and as far as known, the names of such parties; also, the location of the mine or mines of the parties making such

application, and that he has reason to believe, and does believe that the said parties complained of, their agent, or employees, are or have been trespassing upon the mine or mines of the party complaining, or are working their mine in such a manner as to damage or endanger the property of the affiant." And from the first few lines of section 1, which designate that: "Any person or persons, company or corporation, being the owner or owners of, or in possession under any lease or contract for the working of any mine or mines within the State of Nevada, shall have the right to institute and maintain an action, as provided by law, for the recovery of any damages that may accrue by reason of the manner in which any mine or mines have been or are being worked." (Comp. Laws, 250, 252.)

These provisions plainly allow any person, company, or corporation, being the owner of, or in possession under a lease or contract for the working of any mine "to apply for and obtain from any district court, or the judge thereof, an order of survey, by filing the affidavit of the person making the application," stating the things required by the statute to be in this affidavit, none of which require, or make any reference to, a pending or other suit. The statute then directs positively that: "Upon the filing of the affidavit as aforesaid, the court or judge shall cause a notice to be given to the party complained of, or the agent thereof, which notice shall state the time, place, and before whom the application will be heard, and shall cite the party to appear in not less than five or more than ten days from the date thereof, to show cause why an order of survey should not be granted; and upon good cause shown, the court or judge shall grant such order, directed to some competent surveyor or surveyors, or to some competent mechanics, or miners, or both, as the case may be, who shall proceed to make the necessary examination as directed by the court, and report the result and conclusions to the court, which report shall be filed with the clerk of said court."

The language quoted is all that is provided by the stat-

ute, or that is required, for the obtaining of the order for survey, and the interpolation of the requirement by the opinion of the majority of the court of the institution of a suit before the application or order for the survey may be made is a condition not specified or required by the language of the act, and is purely judicial legislation. If this court in this proceeding may go beyond its constitutional power of construing the laws and enter the domain of legislation, it may add other requirements to this and other statutes after persons aggrieved have brought actions or proceedings in compliance with the language of the statute upon which they rely, and they may be defeated and mulcted in costs because the court after hearing may exact some condition which has not been provided by the legislature, and of which they were not aware, and there will be little stability, certainty, or safety in our laws. If a future legislature should desire to allow surveys to be ordered without suit, notwithstanding the decision in this case, what language could it use in an amendment or a new act more broadly indicative of this intention than the language now in section 3 relating to the application or order for the survey, unless by negatively stating that suit need not be brought—something that no rule of construction requires?

Effort is made to justify the decision by a technical construction of the next succeeding sentence in section 3, which relates only to costs of the order and survey after they have been made, and which provides no requirement and makes no reference in regard to the application or order for the survey, and which sentence reads: "The cost of the order and survey shall be paid by the persons making the application, unless such parties shall subsequently maintain an action and recover damages, as provided for in the first two sections of this act, by reason of a trespass or damage done or threatened prior to such survey or examination having been made, and in that case, such costs shall be taxed against the defendant as other costs in the suit." True, a word used in different sections of the statute will ordinarily be

construed as having the same meaning in the different places in which it is used, unless it is manifest that the legislature intended it in a different sense.

If the word "maintain," as used in the sentence just quoted, be considered as referring to a suit previously brought, as held in the opinion, this construction, as given by a majority of the court, would refer only to the costs of the order and survey, and not to the application for the making of the order, and would only be equivalent to making this sentence of the statute read as it does now, with the addition after the word "action" of the words "commenced before the application for the survey was made." Hence the decision is based upon a section which relates only to costs, and to a question which is not before this court, and was not before the district court; for, no survey having been made, no question relating to the costs of the application and survey has been presented by the petition or pleadings. If the word "maintain" were among any of the provisions relating to the application or order for the survey, or if it be considered where it stands in the sentence relating only to costs, the language of section 3 in several particulars indicates to my mind that the legislature did not intend to require the institution of a suit before the application or order for the survey.

If the legislature had intended to require the commencement of a suit, it may be assumed that they would have so stated, and that the law-making body did not intend a condition which it did not impose. As there was a practice act already in force which provided for surveys in pending suits, it would have been useless for the legislature to enact that the applications and orders for the survey could be made only after suit. It would also seem that by providing that "the costs of the order and survey shall be paid by the person making the application, unless such parties shall subsequently maintain an action and recover damages," the legislature used the word "maintain" in its broad sense of "bringing and maintaining" an action, for otherwise the provision in

relation to costs, including the word "maintain," would have been omitted from the section as useless; because, if the survey could be obtained only in a pending suit, the costs of the survey would be a part of the costs of the suit recoverable as other costs.

It is a well-established rule of construction that a statute will be so construed as to give effect to its language, if possible. The omission from all that part of the act relating to the application and order for the survey of any language relating to a suit or to the parties to an action, and, on the contrary, the use of words not requiring the application for the survey to be made by a party to a suit or in an action pending, but allowing it to be made by any person who is the owner of, or in possession under a lease for the working of, adjoining ground, indicate that it was not the intention of the legislature to restrict the application for the survey to a party to an action previously commenced. The policy of the statute in this regard is a matter for legislative judgment; but, where the meaning of the statute is doubtful, the court will ordinarily so construe the statute as to give it an effect which carries the best policy, for in doubtful cases that is presumed to be the one which the legislature intended.

The best policy would allow the survey to be ordered in advance of suit, so that the applicant for the survey would be able to ascertain the true conditions and facts, so that he may properly allege them in his complaint or not commence any action and avoid litigation if he is not justified as he may believe at the time he applies for the survey. Where there are grounds for a suit, there is no good reason why the law should confine a knowledge of the conditions to one of the parties, who is liable to the other, nor why the superintendent or manager of a mine should prevent an adjoining owner, whose ore he may have extracted hundreds of feet below the surface, and the stockholders in general, from ascertaining the facts. Light and truth are better than darkness and concealment. The statute wisely provides that "the parties

making the survey shall be liable for any unnecessary injury done to the property in the making of the survey."

The word "maintain" is often used in our statutes in relation to corporations, administrators and others with a meaning that includes the commencement of or right to institute an action.   In 5 Words and Phrases Judicially Defined, p. 4278, in reference to the meaning of the word "maintain," there are cited, under the subdivision "As commence an action," seven cases holding that the word "maintain," when used in statutes relating to actions, is synonymous with or means "commence," "institute" or "begin."   In one of these it is said: "Men, both in and out of the profession of law, often speak of maintaining an action, having reference to one yet to be instituted." (*Boutiller* v. *The Milwaukee,* 8 Minn. 97, 101; *Byers* v. *Bourret,* 64 Cal. 73, 28 Pac. 61; *Smith* v. *Lyon,* 44 Conn. 175, 179; *Burbank* v. *Inhabitants of Auburn,* 31 Me. 590, 591; *Gumper* v. *Waterbury Traction Co.,* 68 Conn. 424, 36 Atl. 806; *Kinsey & Co.* v. *Ohio Southern R. Co.,* 3 O. C. D. 249, 250; *New Carlisle Bank* v. *Brown,* 5 O. C. D. 94, 95.) Under the next heading, "As continue an action," the same work states that "maintain," as used in a pleading, means to support what has already been brought into existence, and cites the two cases relied upon by the petitioner and the majority of the court (*California Sav. & Loan Soc.* v. *Harris,* 111 Cal. 133, 43 Pac. 525; *Carson-Rand Co.* v. *Stern,* 129 Mo. 381, 31 S. W. 772, 32 L. R. A. 420), and another case (*Moon* v. *Durden,* 2 Exch. 30), stating that "maintain" in pleading has a distinct technical signification.

It may be observed that the prevailing opinion rests upon these two cases defining the word "maintain," when used in a pleading, as meaning "to uphold or sustain an action already commenced," and upon the use of that word in section 3 of our statute, where it only relates to a question of costs, which is not before the court. Although "to maintain" is frequently and properly used in the sense of sustaining or upholding what has already been begun, these cases are distinguishable from, and

are not in conflict with, the seven holding that the word "maintain," when used in a statute relating to actions, means or includes the meaning "commence," "institute," or "begin" an action. As used with "institute" in section 1, the word may be considered either in a restricted or in its broader sense as partly duplicating and partly extending the meaning covered by the word "institute."

The language of the statute in Montana allowing the survey before suit and the Colorado act which was held not to so allow the survey are so dissimilar to ours that the decisions in those states do not lend aid to the construction of our enactment.

The Colorado section relating to surveys closes with the provision that "the costs of the proceeding shall abide the result of the suit." Nor do the cases of *Carson-Rand Co.* v. *Stern* and *California Sav. & Loan Soc.* v. *Harris* apply to questions similar to the one here involved. In them it was held that compliance with the law by a foreign corporation after instituting an action and before the filing of the plea in abatement of the suit on the ground that it had not complied with the statute will remove the right to defend on the ground of noncompliance under a statute providing that no action shall be maintained or defended in any court by a foreign corporation until it files articles of incorporation. These cases, and many others, including *Ward* v. *Mapes*, 147 Cal. 747, 82 Pac. 426, are reviewed in *National Fertilizer Company* v. *Fall River Five Cents Savings Bank*, 196 Mass. 458, 82 N. E. 671, 14 L. R. A. (N. S.) 561, 565, and are there said to be in accordance with the weight of authority.

The district judge was duly empowered by the statute to order the survey without any suit having been commenced, and his action in this regard ought to be sustained.